Hillsborough
No. 7341

AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO, LOCAL 298

v.

CITY OF MANCHESTER, & a.

November 30, 1976

*James J. Barry, Jr.,* by brief and orally, for the plaintiff.

*Elmer T. Bourque,* city solicitor, by brief and orally, for the city of Manchester, Department of Traffic, and Aldermanic Traffic Committee.

LAMPRON, J.    Bill in equity by the plaintiff to enjoin the defendants from refusing to recognize and abide by the terms of a collective bargaining agreement between the plaintiff and the department of highways of the city of Manchester. This agreement, dated May 5, 1969, was to be in force for at least one year and was to continue from year to year thereafter subject to termination upon 30-days notice. Defendants moved to dismiss plaintiff's bill because there is no agreement between the plaintiff and the city of Manchester with respect to the employees of its department of traffic. Hearing before *Perkins,* J., who granted defendants' motion to dismiss. Plaintiff's exceptions to the granting of this motion and to the denial of its motion to set aside the verdict were reserved and transferred.

The issue presented is whether the separation of the traffic division from the department of highways, and the creation of a separate department of traffic comprised of the same personnel terminated the rights and benefits of those employees under the collective bargaining agreement of May 5, 1969.

The department of highways of the city of Manchester is under the direction of its highway commission. When the agreement of May 5, 1969, was entered into, the highway department consisted of several divisions one of which was the traffic division. By Laws 1969, ch. 623 the city was authorized to establish a department of traffic to be administered by the members of the traffic committee of its board of mayor and aldermen. This change was effectuated by means of a referendum held in November 1969, in which the voters gave their approval. Effective January 1, 1970, all the personnel of the traffic division of the department of highways, ten employees and their superintendent, were transferred to and constitute the new department of traffic. All were members of plaintiff's Local No. 298 except the superintendent, Henry D. Brinn.

An important purpose of collective bargaining agreements is to avoid industrial strife between employers and employees by establishing terms governing the employment relationship. These are terms to which both parties have agreed, and it is the understanding and expectation of the parties that they will both respect and be bound by these terms. Shulman, *Reason, Contract, and Law in Labor Relations,* 68 Harv. L. Rev. 999, 1001 (1955); *see* Laws 1975, 490:1. The "Labor Management Relations Act, 1947" does not apply to any State or political division thereof. 29 U.S.C. § 152 (2)

(Supp. 1975). However, judicial decisions under that Act can be of considerable assistance in interpreting collective bargaining agreements such as that of May 5, 1969, with which we are concerned. *See Windsor v. Windsor Police Dep't Employees Ass'n,* 154 Conn. 530, 536, 227 A.2d 65, 68 (1967). Hence decisions pertaining to the survival of collective bargaining contracts in the event of a change of employers are particularly helpful.

An ordinary contract will not bind an unconsenting successor to a contracting party. *See* 15 S. Williston, Contracts § 1870 (Jaeger ed. 1972). However, this is not true of a collective bargaining contract which is intended to regulate all the aspects of the complicated relationship between employer and employees. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578-79 (1960). The contract between the plaintiff and the highway department covered, among other matters, wages and hours, promotions and transfers, causes for discharge, seniority, grievance procedures, annual vacations and many other topics. Even without the compulsion of a statute, such contracts should continue in force, if the circumstances warrant it, when there is a substantial continuity of identity in the enterprise before and after a change in employers. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 551 (1964). *See also NLRB v. Burns Int'l Security Services, Inc.,* 406 U.S. 272, 291 (1972). Where there is little change in the employment relationship, such continuity furthers the expectations of the parties to the collective bargaining agreement and is desirable in that it maintains the stability of the employment relationship between the parties. However, the question of the extent of a successor employer's obligations under a prior collective bargaining agreement must be determined in light of the facts in each case. *See Howard Johnson Co. v. Hotel Employees,* 417 U.S. 249, 262-63, n.9 (1974).

After the changeover in 1970, the same personnel, formerly in the traffic division of the highway department and now constituting the traffic department, has rendered the same services, to the same city of Manchester, in the same manner as it did formerly. The traffic department occupies a building located near the highway department. The latter department still furnishes communication services to the traffic department and also maintains its vehicles. The traffic committee of the board of mayor and aldermen is now the nominal employer instead of the highway commission. In fact the city of Manchester has been the employer

in both instances because the collective bargaining contract of May 5, 1969, had to be agreed to by the board of mayor and aldermen of the city. RSA 31:3; RSA 44:2, :3; *American Federation of State &c. Employees v. Keene,* 108 N.H. 68, 70, 227 A.2d 602, 604 (1967).

When the transfer took place in January 1970, the employees concerned had a discussion with their superintendent Brinn about seniority rights. Brinn testified that, although he had in mind the city's classification and compensation plan, he agreed that the employees could have assumed that the seniority and other rights under the May 5, 1969 collective bargaining agreement would continue in effect. The senior accountant of the highway department advised plaintiff by letter that beginning with the next payroll deductions for payment of these employees' union dues were to be charged to the department of traffic. Article 1 of the May 5 agreement contained a provision for the check-off of union dues.

In December 1970, the union secretary wrote to superintendent Brinn about negotiating a new agreement with the traffic department. His letter contained the following statement: "These men are members of Local #298 and are presently covered by the Highway contract and have been for many years." No response was received. On April 2, 1971, a similar letter was sent to the chairman of the traffic committee of the board of mayor and aldermen. Again no response was received. It was only late in 1974, when two employees filed grievances under the terms of the May 5, 1969 agreement, that plaintiff was informed that there was no collective bargaining agreement covering the employees of the traffic department.

Given the nature and purposes of collective bargaining agreements, the continuity of the identical services rendered to the city of Manchester by the same work force, the apparent operation under the May 5, 1969 agreement from the changeover in January 1970 to late in 1974, we hold that the employees of the traffic department are covered by the terms of the May 5, 1969 agreement. The defendants' motion to dismiss plaintiff's bill in equity was improperly granted and the trial court's order is set aside.

We recognize that some alterations in the provisions of the agreement, such as in the composition of the employer's members of the grievance personnel will have to be made. However, these minor changes will not materially alter the agreement.

We remand the matter to the superior court to proceed with plaintiff's bill in equity in accordance with this opinion.

*Plaintiff's exceptions sustained; remanded.*

Bois, J., did not sit; the others concurred.