Public Employee Labor Relations Board
No. 7579
No. 7580

UNIVERSITY SYSTEM OF NEW HAMPSHIRE

v.

STATE OF NEW HAMPSHIRE & a.

In re UNIVERSITY SYSTEM OF NEW HAMPSHIRE

February 18, 1977

*Devine, Millimet, Stahl & Branch*, of Manchester, and *Silas Little III* and *Morgan, Brown, Kearns & Joy* (of Boston, Massachusetts) and *Arthur P. Menard* and *Nicholas DiGiovanni, Jr.* (*Mr. Menard* and *Mr. DiGiovanni* orally) for the University System of New Hampshire.

*McLane, Graf, Greene, Raulerson & Middleton*, of Manchester, and *Edward L. Cross, Jr.* (*Jack B. Middleton* orally) for the New Hampshire Education Association.

*Steven Ney* and *Woodley B. Osborne* (both of New York, New York) (*Mr. Ney* orally) for the American Association of University Professors.

Professor Paul G. Blacketor, orally, for the American Federation of Teachers.

*Sheehan, Phinney, Bass & Green*, of Manchester, *Bradford E. Cook* and *Warren B. Rudman* (*Mr. Rudman* orally) for the Public Employee Labor Relations Board.

LAMPRON, J. Appeals by the University System of New Hampshire (hereafter "university") and by the New Hampshire Education Association (hereafter NHEA) from a determination of the Public Employee Labor Relations Board (hereafter PELRB) establishing faculty units for purposes of collective bargaining within the university system. These appeals have been brought under the provisions of RSA ch. 541.

Petitions were filed with the PELRB by the American Association of University Professors (hereafter AAUP), by the American Federation of Teachers (hereafter AFT), and by NHEA for determination of the appropriate unit or units of faculty within the university system in accordance with RSA 273-A:8, :10 (Supp. 1975). The PELRB held a public hearing on the matter on March 18, 1976, at which time oral and written testimony was taken. Written briefs were also submitted to the PELRB on or before April 15, 1976.

On May 26, 1976, the PELRB issued its determination, establishing three separate units of full-time academic faculty as follows: One unit at the Durham campus; one unit at the Keene campus; and one unit at the Plymouth campus. The PELRB further determined that librarians and department chairmen shall be included in each bargaining unit so established. The PELRB also deter-

mined that the faculty of the Wheelock Laboratory School at Keene State College are excluded from that bargaining unit.

A rehearing on the matter was held on July 14, 1976, and on August 9, 1976, the PELRB reaffirmed its earlier determination. On appeal the university seeks to overturn the PELRB's determination that librarians and department chairmen are to be included in the bargaining units. The NHEA, joined by the AAUP and the AFT, seeks to overturn the PELRB's determination that the Wheelock Laboratory School faculty are excluded from the Keene campus faculty bargaining unit. The AAUP also filed a motion to dismiss these appeals on the grounds that the PELRB's determination was not a final order within the meaning of RSA 273-A:14 (Supp. 1975), and that these appeals were therefore premature. However, prior to oral argument this motion was withdrawn with prejudice and is not before us.

According to the provisions of RSA 541:13 the burden rests on the appealing parties to show, by a clear preponderance of the evidence, that the determinations of the PELRB complained of are unjust or unreasonable. Otherwise, except for errors of law, we cannot set aside the PELRB's decision. *Hanaway v. State*, 116 N.H. 124, 352 A.2d 715 (1976); *Hampton Nat'l Bank v. State*, 114 N.H. 38, 314 A.2d 668 (1974). The PELRB was recently established (Laws 1975, ch. 490) as the agency responsible for applying the provisions of the Public Employee Labor Relations Act, RSA ch. 273-A (Supp. 1975), to the diverse fact situations coming before it. Due weight must therefore be given its judgment. *See Bayside Enterprises, Inc. v. NLRB*, 97 S. Ct. 576, 581 (1977).

*Librarians.* In determining an appropriate bargaining unit the PELRB is to "take into consideration the principle of community interest." RSA 273-A:8 I (Supp. 1975). Some criteria are listed in this section, including whether the employees share the "same conditions of employment." As community of interest is a virtually universal standard for determining appropriate units in both the public and private sectors, the PELRB can also turn to decisions in other states and by the National Labor Relations Board for additional guidance. *See American Fed. of State, Etc. v. Manchester*, 116 N.H. 665, 668, 366 A.2d 874, 876 (1976); Shaw and Clark, *Determination of Appropriate Bargaining Units in the Public Sector: Legal and Practical Problems*, 51 Ore. L. Rev. 152, 164–65 (1971). The factors to be considered are the skills, duties,

working conditions and benefits of the employees, the organizational structure of the employer, and the extent to which the work is integrated. Ultimately the question is whether there exists a mutuality of interest in working conditions such that it is reasonable for the employees to negotiate jointly. *Id.* at 164; C. Morris, The Developing Labor Law, 217–19 (1971); *Continental Baking Company,* 99 N.L.R.B. 777, 782 (1952). *See also* N.H.S. Jour. 1069–70 (1975).

The PELRB found that librarians "are given faculty rank and tenure based on qualifications and share in the same benefits as faculty members;" that they "participate in a measurable degree in the related teaching process;" and that "[a] community of interest with academic faculty is apparent . . . ." These findings were supported by testimony given at both the initial hearing and the rehearing, as well as by written evidence submitted by interested parties. There was evidence that the librarians hold faculty rank. Tenure and promotions are determined in the same manner as for other faculty members. Librarians also serve on university committees in the same capacity as other faculty members. Although the job of a librarian is not the same as that of other faculty members, librarians are nevertheless engaged in the instruction of students, both on an individual and on a classroom basis. In their relationship to both students and faculty, librarians are an integral part of the university's teaching, learning, and research processes.

The PELRB's determination that librarians should be included in a unit of academic faculty is also consistent with decisions by both the National Labor Relations Board and other state labor relations boards in similar fact situations. *See, e.g., University of Massachusetts,* Mass. Labor Rel. Comm'n, Case Nos. SCR-2079 and SCR-2082 (October 15, 1976); *University of Vermont and State Agricultural College,* 223 N.L.R.B. No. 46 (March 29, 1976); *Rensselaer Polytechnic Institute,* 218 N.L.R.B. 1435 (1975); *New York University,* 205 N.L.R.B. 4 (1973).

■ The decision of the PELRB that librarians share a community of interest with the other faculty so as to be included in a bargaining unit of academic faculty members is based on evidence in the record and constitutes a reasonable interpretation and application of RSA 273-A:8 (Supp. 1975) to the facts of the case. We hold, therefore, that the university has not met the burden of proof required by RSA 541:13 to set aside this portion of the PELRB's

determination. *Lambert Constr. Co. v. State,* 115 N.H. 516, 520, 345 A.2d 396, 398, (1975).

*Department Chairmen.* The university challenges the inclusion of department chairmen in the bargaining unit on three grounds: (1) That they are persons appointed by the chief executive of the institution and are therefore excluded from any bargaining unit by the provisions of RSA 273-A:1 IX(b) (Supp. 1975); (2) that they are confidential employees and are therefore excluded from any bargaining unit by the provisions of RSA 273-A:1 IX(c) (Supp. 1975); and (3) that they are supervisors and cannot therefore be in the same unit as other faculty members under the provisions of RSA 273-A:8 II (Supp. 1975).

 The PELRB made no specific finding regarding whether or not department chairmen are appointed to their positions. The evidence before the PELRB indicated that faculty members become department chairmen by decision of the department faculty, or by decision of the dean in conjunction with the faculty. The inclusion of department chairmen in the bargaining unit of academic faculty does not violate the provision of RSA 273-A:1 IX(b) (Supp. 1975) excluding persons appointed by the employer's chief executive. The PELRB has been vested with the primary authority to construe this statutory provision, *Waste Control Systems, Inc. v. State,* 114 N.H. 21, 24, 314 A.2d 659, 661 (1974), and its decision is accorded prima facie validity. RSA 541:13. We must therefore reject this first challenge by the university.

The PELRB found that "[t]he confidential relationship of the Chairmen to the Administration appears not to exist." The National Labor Relations Board has defined confidential employees as employees "who assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations." *B. F. Goodrich Co.,* 115 N.L.R.B. 722, 724 (1956); *see* 29 Wash. & Lee L. Rev. 350 (1972). This definition has been adopted in the public sector as well. Shaw and Clark, *supra* at 171.

 The evidence showed that access to personnel files is not limited to department chairmen, but extends to members of the department's promotion and tenure committee. Such access would not alone require a finding that the department chairmen are confidential employees. Shaw and Clark, *supra* at 171; *University of Massachusetts,* Mass. Labor Rel. Comm'n, Case Nos. SCR-2079

and SCR-2082 (October 15, 1976). Recommendations to the administration by department chairmen regarding promotions and tenure are made after discussions with other members of the department. This does not constitute confidential interaction between department chairmen and the administration on labor relations matters. The PELRB's determination that department chairmen are not confidential employees is neither unreasonable nor unlawful. *Id.* We are not convinced by this second argument advanced by the university.

The PELRB also found that "[s]upervisory responsibility of Department Chairmen is limited and minimal at best;" that "Chairmen, in reality, act as liaison between the faculty and the Dean and Administrative Officers; make recommendations as to performance, tenure, and to a degree, hiring and firing, but do not possess any final authority in this area;" and that "[t]he community of interest of the Chairmen appear (sic) clearly with the faculty rather than the administrative authorities."

These findings are supported by the evidence. There was testimony that chairmen consider it their role to represent the interests of the faculty and not the interests of the administration. Department chairmen continue to teach and to research, although their teaching load may be reduced. After their term as chairmen, usually about three years, they return full time to their regular duties as faculty members. Decisions and recommendations of a chairman regarding budget allocation, scheduling, promotion, and tenure are made on a collegial basis with other members of their department. The chairmen have no final authority in most of these matters.

While recognizing that each case turns on its own facts, the National Labor Relations Board has established that department chairmen do not *"generally* have or exercise supervisory authority," and places the burden on the employer to show supervisory status requiring exclusion from a faculty bargaining unit. *Rosary Hill College,* 202 N.L.R.B. 1137 (1973) (emphasis in original). In a number of decisions the Board has found department chairmen to be nonsupervisory and has included them in faculty bargaining units. *See, e.g., Fairleigh Dickinson University,* 227 N.L.R.B. No. 40 (December 10, 1976); *Northeastern University,* 218 N.L.R.B. 247 (1975); *Fordham University,* 214 N.L.R.B. 971 (1974). The same conclusion has also been reached in the public sector. *See, e.g., University of Massachusetts,* Mass. Labor Rel. Comm'n, Case Nos.

SCR-2079 and SCR-2082 (October 15, 1976); *State University of New York,* 2 N.Y. Public Employees Relations Board ¶ 4010 (August 12, 1969); *University of Rhode Island,* State Labor Rel. Bd., Case No. EE-1961 (October 19, 1971).

█ The PELRB's determination that department chairmen are not supervisors is therefore supported by the record and in accordance with applicable principles of law. *See* Comment, *The Bargaining Unit Status of Academic Department Chairmen,* 40 U. Chi. L. Rev. 442 (1973). We cannot accept the university's third argument against the inclusion of department chairmen in the bargaining unit. We hold that the university has not met the burden of proof required by RSA 541:13 to set aside the PELRB's determination that department chairmen be included in the full-time academic faculty units.

*Wheelock Laboratory School Faculty.* The PELRB found that the Wheelock Laboratory School faculty "are involved at different levels of teaching than the faculty of Keene State College," and that their "salary schedule, fringe benefits, qualifications are determined in conjunction with the local school board in Keene." The PELRB also construed our decision in *Plymouth School District v. State Board of Education,* 112 N.H. 74, 289 A.2d 73 (1972), to hold that laboratory school teachers are public school teachers, not members of the college faculty, and considered the decision to be applicable to this case.

The PELRB has erroneously interpreted the *Plymouth School District* case. We held only that, whatever their status, the laboratory school teachers were entitled to certain procedural rights under RSA 189:14-a when, after termination of the contract between Plymouth State College and the Plymouth School District, the school district failed to renominate or reelect them as teachers. We did not hold that the laboratory school teachers were public school teachers. Nor did we hold that they were "not members of the Plymouth State College faculty" as stated in the board's decision.

█ We are unable to conclude that the PELRB's erroneous interpretation of the *Plymouth School District* case had no significant influence on its decision. *See Parker-Young Co. v. State,* 83 N.H. 551, 145 A. 786 (1929). Nor can we hold that the PELRB must necessarily reach the determination that the Wheelock Laboratory School teachers are to be excluded from the bargaining unit. The

record discloses substantial evidence on which the PELRB could also base a determination that the Wheelock Laboratory School faculty share a community of interest with the other academic faculty and that they should be included in the bargaining unit.

As we cannot substitute our judgment for that of the PELRB, we must remand this case for a redetermination of the question whether the Wheelock Laboratory School teachers are to be included in or excluded from the Keene campus faculty bargaining unit. We are of the opinion that this determination can be arrived at by the PELRB from the record already before it, examined in the light of the *Plymouth School District* case.

*Remanded.*

All concurred.