Public Employee Labor Relations Board
No. 78-294

APPEAL OF KEENE STATE COLLEGE EDUCATION ASSOCIATION,
NHEA/NEA
(New Hampshire Public Employee Labor Relations Board)
January 31, 1980

*McLane, Graf, Greene, Raulerson & Middleton,* of Manchester *(Jack B. Middleton* orally), for the plaintiff.

*Morgan, Brown, Kearns & Joy,* of Massachusetts, and *Devine, Millimet, Stahl & Branch,* of Manchester, by brief for the defendant.

DOUGLAS, J.   This case concerns the standards to be used in Public Employee Labor Relations Board (PELRB) decisions when a State university faculty bargaining unit alleges unfair labor practice violations of RSA ch. 273-A.

The history of collective bargaining relations between the University System (system) of New Hampshire, Keene State College, and the Keene State College Education Association (association) has been controversial. The faculty units established by the PELRB in 1976 were challenged before this court by both the association and the system in *University System v. State,* 117 N.H. 96, 369 A.2d 1139 (1977). Representative elections and a run-off election, in which lecturers voted, were held in 1977. The university system challenged the validity of those ballots cast by lecturers, and in a subsequent ruling the PELRB excluded lecturers from the faculty unit. We affirmed that decision in *Keene State College Education Association v. State,* 119 N.H. 1, 396 A.2d 1099 (1979).

Pending resolution of the issues raised by the elections, the university system undertook several unilateral acts. During the summer of 1977, the system's board of trustees granted an increase in pension benefits to all faculty "not engaged in collective bargaining," to become effective January 1, 1978. After the run-off election, the system denied those benefits to Keene State faculty on the ground that they had been engaged in collective bargaining. The system also denied Keene State faculty the right to have observers present at meetings of the trustees' committees and at full trustees' meetings. On February 24, one day after the association was certified as the bargaining representative of Keene State faculty, the system announced the elimination of department chairmanships and the creation of a new administrative tier of six associate deans to assume those administrative duties previously performed by the chairmen. The system also eliminated the faculty committee system, which advised on and implemented policies governing promotion, tenure, and other personnel decisions. These changes pertained only to the Keene State campus; none of the other system campuses were affected.

The association then filed a complaint with the PELRB alleging that, in instituting the above changes, the system had committed

certain unfair labor practices. RSA 273-A:5. The board found that the university had studied its administrative structures for some time and that the trustees felt the need to maintain their administrative functions through personnel outside the bargaining unit. While the PELRB said that it could not find that the purpose in eliminating department chairmen was an unfair labor practice, it did rule that the university was required to bargain over the effects of the change on the individuals displaced as department chairmen in such areas as work load, pay, benefits and the manner of returning them to full-time faculty status.

The board also stated that both parties may insist that all negotiations regarding wages, hours and conditions of employment be carried on at the bargaining table and further stated that if the university should seek to use or continue to use an alternative system, it might subject itself to an unfair labor practice charge absent an agreement to the contrary. The board made it clear, however, that it was not ruling that the parties by agreement could not reestablish the preexisting system, and neither was it ruling that reestablishment was required.

On the question of exclusion from committees, the board ruled that except for those committees dealing with wages, hours and conditions of employment, the faculty should be restored to a status equal to that of faculty at other campuses in the system. It also noted that faculty as other citizens had certain rights under the right-to-know law, RSA ch. 91-A, to attend meetings.

The order of the board was that Keene faculty be given "the same benefits and increases" as other faculty unless the union objected, in which case there should be negotiations; that the parties negotiate regarding the status of deposed chairmen including their "workload, salaries and benefits" as a result of their loss of administrative duties, and that the university was to "restore faculty members to such committees of the board of trustees," and allow faculty participation at meetings of those committees, "which do not consider terms and conditions of employment . . . equal to the rights of other system faculty." The association appealed under RSA 273-A:14 and RSA ch. 541.

■ We first address the association's procedural argument that because neither of the PELRB's two "labor representative" members was present at the time the decision was issued or at the time of rehearing, the board's decision is invalid. We reject that argument. The board's composition is governed by RSA 273-A:2, which states in pertinent part:

I. There is hereby created a public employee labor relations board consisting of 5 members. . . . Two members shall be

appointed who shall have extensive experience representing organized labor. Two members shall be appointed who shall have extensive experience in representing management interests. One member who shall be the chairman shall be appointed to represent the public at large. . . .

. . .

III. Three members of the Board shall constitute a quorum. In the chairman's absence, the senior member present shall act as temporary chairman.

In *Ahern v. Laconia Country Club, Inc.*, 118 N.H. 623, 392 A.2d 587 (1978), we said that "[w]here the language of a statute is plain and unambiguous, the statute must be given effect according to its plain and obvious meaning." There is no ambiguity in RSA 273-A:2; the board's total membership must be balanced between management and labor, but no such balance is required of a quorum. We therefore hold that the PELRB was properly constituted in the present case and that its decision was valid. *But see* Laws 1979, 374:2, which changes the quorum requirement.

The association argues that the board should have found the following unilateral actions to be unfair labor practices: the elimination of faculty committees and the suspension of all policies administered by those committees, the denial of the right to have faculty observers present at meetings of the board of trustees and their committees, and the abolition of department chairmanships. The association claims violations of RSA 273-A:5 I(a), which prohibits interference with the exercise of employee rights; section 5 I(c), which prohibits discrimination against employees in the exercise of their collective bargaining rights; and section 5 I(e), which requires that public employers negotiate in good faith with the exclusive representative of the bargaining unit. We address the good-faith bargaining claim first.

■■ We agree with the board that under RSA 273-A:1 XI the system's administrative structure is a matter of managerial prerogative and that the system is not under a duty to bargain over the decision to alter that structure. Our statute, unlike federal law, makes non-bargainable those "terms and conditions of employment" that are matters of "managerial policy within the exclusive prerogative of the public employer." The latter phrase includes the "public employer's organizational structure" and the "direction" of its personnel. *Compare State Employees' Ass'n v. Mills*, 115 N.H. 473, 344 A.2d 6 (1975). But an employer may not use his managerial prerogative as a shield to hide violations of RSA 273-A:5 I(a) or :5 I(c). *See* R.

GORMAN, BASIC TEXT ON LABOR LAW: UNIONIZATION AND COLLECTIVE BARGAINING 133 (1976); *cf. NLRB v. Erie Resistor Corp.*, 373 U.S. 221 (1963); *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26 (1967).

In its decision the PELRB stated that "the adoption of collective bargaining, . . . changes that [sic] nature of the relationship between employers and employees and can fundamentally alter the decision-making process in an institution." *Keene State College Ed. Ass'n v. University System of New Hampshire, Keene State College,* Decision No. 78-028 (June, 1978). The board said that in the absence of an agreement to the contrary, the continuation of the faculty committee structure and faculty observers might subject the system to a charge that it violated the union's right to be the sole representative of unit members under the doctrine of exclusive representation. Therefore, it held that the elimination of committees and observers was not legally impermissible once collective bargaining was adopted.

Universities, whether public or private, are organized according to a model that had its genesis in the "community of learners" concept of the medieval universities. McHugh, *Collective Bargaining with Professionals in Higher Education: Problems in Unit Determinations,* 33 WISC. L. REV. 55, 64 (1971). These universities were administered by their faculties, who elected their own officials and established their own rules. R. HOFSTADTER & W. METZGER, THE DEVELOPMENT OF FREEDOM IN THE UNITED STATES 6 (1955); *see* Kahn, *The NLRB and Higher Education: The Failure of Policy-making Through Adjudication,* 21 U.C.L.A. L. REV. 63, 73 (1973). This method of decision-making has been carried forward and incorporated in present-day university governance systems, which recognize the "inescapable interdependence among the governing board, the administration, [and] the faculty," and allocates decision-making responsibility among these three groups. *1966 Statement of Government of Colleges and Universities,* printed in ACADEMIC FREEDOM AND TENURE 90 (L. Joughin ed. 1969). The faculty's authority is exercised through an extensive committee network, a characteristic of all institutions of higher education. Menard, *Exploding Representation Areas: Colleges and Universities,* 17 B.C. INDUS. AND COM. L. REV. 931, 977 (1976). Through this governance structure, faculty have traditionally had a voice in almost all aspects of university life. Moreover, the faculty's voice frequently prevails in decisions that affect the primary purpose of the university. Kahn, *supra* at 67 n.5.

The scope of their involvement has been described as covering "education and administrative policies; personnel administration; economic matters ranging from the total resources available to the

institution to the compensation for particular individuals; public questions that affect the role and functions of the institutions; and procedures for faculty representation in campus governance." American Association for Higher Education, Task Force Report, *Faculty Participation in Academic Governance* (1976), *cited* in Kahn, *supra* at 72. Because faculty are intimately involved with the educational process, their perspective in these diverse areas may be helpful to university decision-making. *See* Finkin, *Faculty Bargaining in Higher Education*, 3 J.L. & EDUC. 439, 444 (1974); *cf. Madison School District v. Wisconsin Employment Relations Commission*, 429 U.S. 167, 177 (1976).

■■ Faculty committees and observers serve as an advisory wing of management in university decision-making. They are not intended nor do they have the power to enter into binding agreements on behalf of faculty. *Cf. Madison School District v. Wisconsin Employment Relations Commission*, 429 U.S. at 174 and n.6 (questioning a state court holding that a public school teacher had engaged in bargaining in violation of the doctrine of exclusive representation when the teacher did not offer to bargain with the board, was not authorized by fellow teachers to enter agreement, and communications took place outside of normal bargaining sessions). Because the purposes of the doctrine of exclusive representation are sometimes inapplicable in a university faculty setting, we hold that the doctrine need not bar the existence of advisory faculty committees or observers. Of course, we agree with the board that conditions of employment such as pay and hours remain proper subjects of union bargaining, while committees dealing with curriculum, honorary degrees or research topics would not impinge on exclusive union representation. We can offer no bright line distinction for the PELRB or administrators in this area. We prefer to leave some play in the joints rather than to constrict or destroy campus life in the name of RSA ch. 273-A. *Contra*, Decision by the General Counsel of the NLRB, *Endicott College Case*, No. 1-CA-12, 171 (1977).

■ Unlike faculty committees and observers, department chairmen were included in the bargaining unit by the PELRB and by this court, *University System v. State*, 117 N.H. 96, 369 A.2d 1139 (1977), even though they did perform some management functions. That does not mean the system had to abolish them upon unionization. For reasons we have already discussed, the unique structure of university life would permit their continued existence. However, RSA 273-A:1 XI permits the system to consider "organizational structure" as a non-bargainable, management prerogative item. We hold that the board committed no error in its ruling regarding the chairmen, but

note that the existence of department chairmen is not precluded by RSA ch. 273-A.

In holding that faculty committees, observers and department chairmen are part of the management structure of the university, we recognize that the system's managerial prerogative permits it to eliminate them. Nevertheless, managerial prerogative cannot be used as a pretext to hide violations of RSA 273-A:5 I(a) or :5 I(c). *See* Gorman *supra; cf. NLRB v. Erie Resistor Corp. supra.*

██ ██ There is evidence from which the board could properly conclude that the employer decisions in the present case did not constitute such a pretext. We further recognize that there may be some instances where the conduct of the employer is so inherently destructive of important employee rights that it may be proscribed without the necessity of proof of an underlying anti-union motive. *See NLRB v. Great Dane Trailers*, 388 U.S. 26 (1967). This is not such a case. The board did not find a violation of either RSA 273-A:5 I(a) or :5 I (c). Our standard of review for PELRB rulings requires the appealing party to show by a clear preponderance of the evidence that the PELRB's rulings are unjust or unreasonable, *Keene State College Education Ass'n, NHEA/NEA v. State supra; University System v. State supra*, or that the PELRB has made an error of law. RSA 541:13; *Peterborough Savings Bank v. King*, 103 N.H. 206, 168 A.2d 116 (1961).

We find no error in the present case and, accordingly, uphold the board.

*Appeal dismissed.*

KING, J., did not sit; the others concurred.