**SUN OIL COMPANY OF PENNSYLVA-NIA, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 77-1413, 77-1414.**

United States Court of Appeals, Third Circuit.

Argued Feb. 17, 1978.

Decided May 1, 1978.

554

J. Anthony Messina, Kenneth L. Oliver, Vincent J. Pentima, Philadelphia, Pa., for petitioner.

William R. Stewart, Vivian A. Miller, John S. Irving, John E. Higgins, Jr., Carl L. Taylor, Elliott Moore, N.L.R.B., Washington, D.C., for respondent.

Before SEITZ, Chief Judge, ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises the question, which we believed we had already laid to rest in *American Bridge Division, U. S. Steel Corp. v. NLRB*, 457 F.2d 660 (3d Cir. 1972), and later in *NLRB v. Gloekler North East Co.*, 540 F.2d 197 (3d Cir. 1976), of whether a local independent union's affiliation with a large international union creates an entirely distinct bargaining representative. In the instant case, the Sun Oil Company of Pennsylvania ("the Company") petitions for review of two decisions and orders of the National Labor Relations Board ("NLRB" or "the Board") sustaining a finding that the Company committed unfair labor practices in violation of section 8(a)(5) of the National Labor Relations Act ("NLRA"). The Board charged that the Company's refusal to honor a union security provision of a collective bargaining agreement with two independent union locals ("Independents"), which became affiliated with the Oil, Chemical, and Atomic Workers International Union ("International" or "OCAW") during the term of their bargaining agreement, and its refusal to bargain with them until certified after a Board supervised election

constituted a refusal to bargain in violation of section 8(a)(5).

We deny enforcement of the Board's order.

## I.

The Company operates, among other facilities, two petroleum storage and distribution terminals, one in Clermont, Indiana, and one in Owosso, Michigan, both of which employ approximately thirty people. Since 1969 in Owosso, and since 1970 in Clermont, the Company's employees were represented exclusively by two independent unions, the Central Michigan Independent Oil Workers Union (Owosso) and the Independent Drivers and Warehousemen's Association of Indianapolis (Clermont), respectively. Both of these independents had entered into collective bargaining agreements with the Company in 1974, the Clermont contract extending until 1976, the Owosso contract extending until 1977. Both contracts contained union-security provisions, which required that the Company discharge employees who did not join the independent union.

During the term of the contracts, representatives of the International met with officers of both Independents to discuss the advantages of affiliating with the International. After several months of consideration, the members of both Independents ultimately voted to join the International, the Clermont independent in June 1975, the Owosso independent in September 1975. Thereupon, the International chartered each of the former Independents as separate locals. Subsequently, the president of each local sent a letter to the Company, informing it of the Independents' "change in name" and the local's intent to honor fully all contractual commitments to the Company.

The Company responded identically to these letters. The Company informed the locals that it would not recognize or bargain with the OCAW Local because the Company had a good faith doubt as to the actual representational preferences of a majority of its employees and because it considered the OCAW Local an entirely new, and uncertified, bargaining representative. Therefore, in light of its responsibilities to respect the will of its employees, the Company stated that it would file a representation ("RM") petition with the Board, requesting the Board to conduct a secret ballot election to determine the employees' choice for collective bargaining representative.[1]

The NLRB Regional Director ordered elections in both plants, and in both plants the employees voted to affiliate with the International. Accordingly, the Board certified a local of the OCAW as collective bargaining representative for employees of the Owosso plant in September 1975, and in November 1975, certified an OCAW Local for the Clermont plant. In both locals, the union representatives indicated that they intended to abide by the agreement each had signed as an independent a year earlier.

The Company met its obligation to recognize the newly certified Locals and to honor the collective bargaining agreements in all aspects, except one.[2] The sole problem concerned the union-security clause of the contract: the Company refused to agree to an amended union-security clause, proposed by the OCAW Locals, requiring employees to become members of the OCAW Local as a condition of employment in both the Clermont and Owosso plants. The Company did indicate, however, that it would be willing to bargain about any other proposals the OCAW Local might have.

---

1. To preserve industrial stability and to support the integrity of lawful contract terms, NLRB elections are usually barred during the term of a collective-bargaining agreement. In this case, however, all parties entered into a "Stipulation for Certification upon Consent Election," thereby waiving the contract bar rule.

2. Initially, the Company refused to transfer dues check-off payments—money the Company deducts for union dues from workers' paychecks for direct transmittal to the union—to the OCAW Locals, instead holding the dues in escrow. Once newly executed authorization cards by the members were submitted, however, the Company forwarded the dues to the OCAW Locals.

In response to the Company's refusal to enforce the union-security clause, the locals filed identical charges with the NLRB, in Detroit and Indianapolis, alleging that the Company unlawfully refused to bargain and that it unlawfully refused to continue in effect all provisions of the collective bargaining agreements with the former Independents. Following an investigation by the appropriate regional offices, the NLRB issued complaints based on the filed charges. The matter was heard before an administrative law judge ("ALJ") on July 1 and 2, 1976, in Indianapolis, and on July 7, 1976, in Detroit. On the basis of those hearings, and submitted memoranda of law, the ALJ rendered a decision and order in each case, finding that the affiliation of the Independents with the International was valid as of the date of the affiliation vote, and as successors to the Independents, the newly affiliated Locals were entitled to be recognized by and to bargain with the Company. Furthermore, the ALJ concluded that the Company's refusal to continue in full force and effect all provisions of each collective bargaining agreement with the Independents, including the union-security clause, also constituted a violation of section 8(a)(5) of the NLRA.

The Company timely filed exceptions to both of these decisions on the grounds that the OCAW Local constituted a new and different collective bargaining representative, and that the NLRB's election and certification of the OCAW Local terminated the Company's obligation to enforce the prior union-security provision. Therefore, there was no obligation to agree to a new union-security provision with the OCAW Local.

On March 25, 1977, a three-member panel of the Board affirmed and adopted the decisions and orders of the ALJ, directing the Company to bargain with the OCAW Locals and to honor in full all terms of the collective bargaining agreements, including the union-security provision. On March 30, 1977, the Company filed a petition for review; on May 6, 1977, the NLRB cross-applied for enforcement. On June 8, 1977, this Court granted a consent Motion for Consolidation, and consolidated both cases for briefing and oral argument.

## II.

An employer's duty to bargain arises, absent unfair labor practices, only after a Union's representative status is determined by a certification election. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). That a local independent's affiliation with a large international union can give rise to a representation question sufficient to end an employer's duty to bargain with that newly-affiliated local is settled law in this Circuit. In *American Bridge Division, U. S. Steel Corp. v. NLRB*, 457 F.2d 660 (3d Cir. 1972), an independent union representing salaried clerical and technical employees in one plant voted to affiliate with the United Steel Workers of America ("USW"). The Board certified the USW Local as the bargaining representative without an election, but the company refused to bargain with it. On review, this court held that the Board's failure to provide a representation election improperly denied the employees' freedom of choice and the opportunity to consider affiliation, because the affiliation resulted in a substantial change in the identity of the bargaining representative.

In concluding that the bargaining representative had been replaced, the Court pointed to several indicia of change:

The very act of affiliation here is a commitment to change in the fulcrum of union control and representation. There is a clear departure from the former status of an independent union, where local officers negotiated the contract, settled the terms, handled the grievances and decided when and when not to strike, and where employees in the bargaining unit alone fixed their dues, fines and assessments. Important powers thus have been transferred to the officers of the International Union, who carry responsibility for the overall interests of the 1,120,000 members of the union and not necessarily

the primary interest of the 304 salaried and technical personnel at Ambridge. 457 F.2d at 664.

The stress in *American Bridge* on specific factors as indicating the substitution of a new bargaining representative was emphasized in *NLRB v. Bernard Gloekler North East Co.*, 540 F.2d 197 (3d Cir. 1976). In that case, an independent union, the exclusive bargaining representative of the production and maintenance employees of one employer, voted during the term of their collective bargaining agreement, to affiliate with the United Auto Workers. The newly-affiliated UAW Local sent a letter to the employer stating that the vote had changed only the name of the independent union, and declaring that the new local would honor all contractual provisions with the employer. The employer refused to bargain with the UAW Local, and the Board found the employer in violation of section 8(a)(5) of the NLRA.

On review, the court applied the analysis of *American Bridge*, and concluded that the independent union's "structure, administration, assets, membership, autonomy and by-laws" had been changed. Attaching particular significance to evidence indicating a substantial increase in economic power, *id.*, at 201–02, the court held that the affiliation vote raised a question of representation sufficient to relieve the employer "of his bargaining duty until the question of representation is resolved at a Board election." *Id.* at 200, *quoting Universal Tool & Stamping Co.*, 182 NLRB 254, 259 (1970).

The factors which prompted this court to conclude that the bargaining representative had changed in *American Bridge* and *Gloekler* are present in the instant case as well. The Independents' constitution and by-laws were largely superseded by the International, which prescribes certain mandatory provisions for the constitution and by-laws of its locals, including *inter alia*: control by the International over the procedure for calling a strike and for granting strike benefits; required per capita tax payable to the International; authorization for the audit of the Local's financial records

by the International; and mandatory support by the Local of any policy formulated by the national committee which is approved by 75 percent of the International's bargaining units. In addition, the Company is now required to bargain with an International Union which, with some 200,000 dues-paying members, has interests and positions of national scope not necessarily in harmony with the interests of a local union and which can also flex considerably more bargaining muscle than the 30-person local Independent. This change in viewpoint because of national concerns, and the increase in bargaining power combined with the transferral of the local Independent's governing autonomy to the International, indicate to us, in light of *American Bridge* and *Gloekler*, that the OCAW Locals were distinct and new bargaining representatives with which the Company had no obligation to bargain until the Locals were certified by the Board.

We have considerable difficulty in reconciling the Board's supervision of a representation election with their position in this appeal and that there was no change in the bargaining representative. The ALJ concluded that the Regional Director's approval of the contract bar waiver to allow the representation election to proceed constituted merely a means of expediting recognition of the affiliation in an effort to satisfy the Company's objections to bargaining. Therefore, the Board maintains, the OCAW Locals should not be precluded from pressing their claims that they are simply successor organizations. This position, which the ALJ noted is unsupported by precedent, is not persuasive. Rather, we take the view that by agreeing to conduct an election upon the parties' waiver of the contract bar, the Board determined, in effect, that the employees had a choice between different and distinct bargaining representatives or none. The alternatives for the employees were, in fact, very real: between continuing to enjoy complete control of their organization and governing autonomy and abandoning independence for international affiliation.

We hold that when a local independent labor union affiliates with and becomes a local unit of an international union and transfers control over the rights of its members to the international whose constitution and by-laws make substantial changes in the rights of employees to the contract, affects their obligations to management and links their concerns with thousands of other members of the international throughout the country, a change is effected in the bargaining agent of such employees. This holding, in effect, reiterates our previous holdings in *American Bridge* and *Gloekler*, and the principle these cases enunciate should now be manifestly clear to the Board. Therefore, the Board's affirmance of the ALJ's decision that the Company violated section 8(a)(5) by refusing to bargain with the OCAW Local after the affiliation vote and before the Board certification election was erroneous.

We also hold erroneous the Board's affirmance of the ALJ's decision that the Company violated section 8(a)(5) by refusing to enforce the union-security provision of the collective bargaining agreement between the Company and the Independents. Except in limited circumstances not applicable here, *Nolde Brothers v. Bakery & Confectionary Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), an employer is not bound by the terms of a collective bargaining agreement once that agreement has terminated. *NLRB v. Cone Mills Corp.*, 373 F.2d 595 (4th Cir. 1967). *See American Ship Building Co. v. NLRB*, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). The Independents' affiliation with the International and their subsequent certification created new bargaining representatives, terminating the old bargaining agreements and the Company's duty to enforce the union-security provisions. *NLRB*

*v. Cone Mills Corp., supra* at 598. *See Dow Chemical Co., Indianapolis Division v. OCAWIU*, 186 NLRB 372, 380 (1970).

Accordingly, we will grant the petitions for review, we will deny the Board's petition for enforcement, and we will set aside the Board's orders.[3]

---

3. There is some question that this dispute may be moot, for the parties have now negotiated a new collective bargaining agreement without a union-security clause. A motion by the Board to dismiss the case for mootness was denied. We believe this case is not moot because important collateral consequences may flow from the Board's order unless the unfair labor practice violations are expunged from Sun Oil's labor relations record. *See Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 125, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). Because the Board often gives consideration to past misconduct in determining current claims of unfair labor practices, the Company has a continuing, vital interest in a clear pronouncement that they have committed no unfair labor practices in this instance.