Public Employees Labor Relations Board
No. 78-295

# ROGER A. BOUCHARD

### v.

# CITY OF ROCHESTER
### AND
## GEORGE C. NADEAU, COMMISSIONER

November 14, 1979

*Robert A. Solomon*, of Rochester, by brief and orally, for the plaintiff.

*William B. Cullimore*, of Farmington (*Richard L. Boire* orally), for the defendant.

GRIMES, C.J.   The city of Rochester and its commissioner for public works appeal pursuant to RSA 541:6 a ruling of the public employee labor relations board (hereinafter PELRB) that the city committed an unfair labor practice when, after a hearing, it suspended indefinitely the plaintiff Bouchard, a city employee. Defendants attack the PELRB's order reinstating Bouchard with back pay on numerous technical grounds. We do not reach the defendants' arguments, however, because we conclude that the order here in question exceeds the scope of authority granted the PELRB by RSA 273-A:6 VI. Accordingly, we reverse the decision below and dismiss the complaint.

The facts of this case are relatively simple. At the time of the incident out of which this dispute arose, Bouchard operated a rubbish truck for the city of Rochester's Department of Public Works, and had been employed by the city for about seven years. On November 11, 1977, Bouchard was operating his truck in the city when he became involved in an altercation with a woman resident. It was disputed whether he directed profanity at the woman or whether she directed it at him. In any event, the woman filed a written complaint with Bouchard's supervisor, the commissioner for public works. Thereafter, Bouchard was relieved of his duties by the commissioner. At a subsequent hearing before the public works committee of the Rochester City Council, at which Bouchard was present with his union representative, the committee affirmed the commissioner's actions and suspended him indefinitely. Bouchard then filed an unfair labor practice charge with the PELRB.

Following a hearing at which all parties were represented, the PELRB concluded that by indefinitely suspending Bouchard, the city had placed him "in a state of limbo . . . , thus depriving the employee of his right to receive unemployment compensation and resulting in certain constraints in seeking other employment. To be suspended indefinitely from November 11, 1977, without a final resolution of his status as an employee is in fact unfair." Accordingly, the PELRB found the city guilty of an unfair labor practice and ordered Bouchard reinstated with back pay.

Upon receipt of the PELRB's order, the city moved for a rehearing. At the rehearing, the city contended that although Bouchard had been indefinitely suspended at the time of its original decision in November 1977, he knew and understood that his employment with the city had been terminated. In its opinion on rehearing, the PELRB made the additional finding that the city and Bouchard's union were observing the terms of an expired collective bargaining agreement. The PELRB reaffirmed its earlier finding that the employee had been indefinitely suspended, rather than terminated, and that the city had communicated this information to the department of employment security, thus depriving Bouchard of unemployment benefits. It also found that Bouchard was never allowed to confront his accuser at the hearing before the public works committee, and that the accuser's credibility "was at least subject to question and evidence on the record before the Board and the Public Works officials, . . . was that the employee had not engaged in the actions complained of." Finally, the PELRB reiterated that an indefinite suspension, as opposed to a termination, was unfair. It concluded that "[t]his unfair treatment and result could not have been contemplated by those designing and attempting to put into practice the grievance review system. It was and continues to be an unfair situation constituting an unfair labor practice." Upon receipt of the PELRB's second order, the city petitioned this court for review.

In reviewing decisions of administrative agencies, this court "must consider both the facts found and the application of the relevant statute by that agency." *N.H. Dept. of Rev. Administration v. Public Emp. Lab. Rel. Bd.*, 117 N.H. 976, 977, 380 A.2d 1085, 1086 (1977). The authority of the PELRB to issue remedial orders such as the one here contested stems from RSA 273-A:6 VI, which provides in part:

> *Upon finding that a party has violated RSA 273-A:5*, the board shall issue a cease and desist order. The board may order reinstatement of an employee with back pay, periodic reporting of compliance or such other relief as the board may deem necessary.

(Emphasis added.) RSA 273-A:5 contains a detailed listing of labor practices that the legislature sought to proscribe in public sector collective bargaining. *See* 1975 N.H. Laws 490:1. The only provision of the statute that could possibly apply here provides that "[i]t shall be a prohibited practice for any public employer: (h) To breach a collective bargaining agreement." RSA 273-A:5 I(h). Thus, unless the city

breached the terms of a collective bargaining agreement, the PELRB's order must fall.

In its original order, the PELRB made no such finding. Instead, it concluded that by indefinitely suspending Bouchard, rather than firing him, the city had acted *unfairly*. The PELRB was of the opinion that such status deprived the employee of his right to unemployment compensation and hindered him in pursuing other employment. It declared this action to be an unfair labor practice.

In so ruling, the PELRB exceeded its authority under the statute. RSA 273-A:5 I does not prohibit any act by a public employer that may be considered unfair. Instead, it proscribes certain acts in derogation of the collective bargaining process. Short of that, the PELRB has no other source of remedial power, and the decision whether or not to discharge an employee is a matter of managerial policy. *See* RSA 273-A:1 XI. The legislative history of RSA ch. 273-A reveals an intent to minimize the impact of public sector collective bargaining on the public employer's managerial prerogatives. The report of discussion on the proposed act in the senate reveals the following exchange:

> *Sen. Bradley*: Regarding the scope of bargaining, I see that this has been broadened to include terms and conditions of employment. That is potentially a very broad term. As I understand it, there is also a very broad general exception to exclude from terms and conditions so-called management rights, managerial policy. What I am interested in doing is flushing out if we can for the legislative history a little more concretely what is being reserved to managerial policy and management rights. I understand that the scope of bargaining in this bill will, for example, not include the hiring, the firing, the demotion, the promotion of employees?

> *Sen. Jacobson*: No, that is managerial policy, except under the grievance procedure a person may lodge a grievance. For example, if a person is to be dismissed for some reason, he may lodge a grievance, and that may be heard.

1975 S. JOUR. 1108. Thus, neither by intent nor by express language did the legislature confer authority upon the PELRB to review personnel actions for basic fairness. We hold that the action of indefinitely suspending, instead of outright firing, Bouchard does not constitute an unfair labor practice under RSA 273-A:5.

In its opinion following rehearing, the PELRB found that the city and the union were following the provisions of an expired collective bargaining agreement relative to grievances and terminations. It reaffirmed its earlier finding that the employee had been indefinitely suspended, rather than terminated, and that such a status was unfair. The PELRB then made the additional finding that "Bouchard did not get a complete hearing . . . ," and that "[t]his unfair treatment and result could not have been contemplated by those designing and attempting to put into practice the grievance review system." However, the PELRB sought and obtained the contract between the city and the union only after the conclusion of the rehearing. Moreover, Bouchard did in fact have a hearing before the public works committee at the time of the alleged incident.

We conclude that even with the additional findings contained in the PELRB's opinion upon rehearing, its order must fall. As we have said, unless there was a breach of contract, there could be no unfair labor practice under RSA 273-A:5, regardless of what other remedies may have been open to Bouchard. Although the PELRB found that the city was observing certain provisions of the contract, it acknowledged that the agreement had expired almost a year prior to Bouchard's suspension. Moreover, there was no indication that the parties intended the hearing provision to survive the expiration of the agreement. Absent such indication, an employer is generally not bound by the provisions of a terminated agreement. *See, e.g., Sun Oil Co. of Pennsylvania v. N.L.R.B.*, 576 F.2d 553, 558 (3d Cir. 1978); *N.L.R.B. v. Cone Mills Corp.*, 373 F.2d 595, 598 (4th Cir. 1967). *But cf. Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243 (1977) (arbitration provision of a terminated agreement held applicable to disputes arising under the contract, absent express indication of the parties contrary intent). Even assuming that the hearing afforded to Bouchard by the city did not meet the requirements of the contract, a point we need not decide, there was still no breach, inasmuch as there was at the time of the incident no binding contractual obligation between the parties. It follows that there could be no unfair labor practice arising from the city's failure to accord Bouchard a full adversary hearing. Accordingly, we reverse the PELRB's determination.

*Complaint dismissed.*

KING, J., did not sit; the others concurred.