Public Employee Labor Relations Board
No. 82-334

## APPEAL OF WHITE MOUNTAINS EDUCATION ASSOCIATION
### (New Hampshire Public Employee Labor Relations Board)

December 31, 1984

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Jack B. Middleton* and *Kevin M. Fitzgerald* on the brief, and *Mr. Fitzgerald* orally), for the White Mountains Education Association, NHEA/NEA.

*Nighswander, Martin, Kidder & Mitchell P.A.*, of Laconia (*Jay C. Boynton* on the brief and orally), for Roland L. Schoepf, in his capacity as Superintendent of Schools, White Mountains Regional School District.

SOUTER, J.   This is an appeal under RSA 541:6 from a decision of the public employee labor relations board under RSA 273-A:6 (Supp. 1983). The plaintiff, White Mountains Education Association, acted on behalf of its member, Gary Savage, in filing a complaint against the defendant Roland Schoepf as superintendent of the White Mountains Regional School District. The association claimed that the district's discharge of Savage was an unfair labor practice under RSA 273-A:5, I(a) and (d). After an initial hearing, the board found a violation of the statute and ordered the district to reinstate Savage under RSA 273-A:6, VI (Supp. 1983) but without back pay.

Each party moved for rehearing under RSA 541:3. The board granted the motions and after further hearing reversed its earlier conclusion, on the ground that the board lacked "jurisdiction" to find a violation of RSA 273-A:5, I, on the record before it. The association appeals the board's refusal to award back pay in the first order, and its dismissal of the complaint on rehearing. We affirm.

The board's record indicates that in 1980 members of the kitchen staff of the McIntyre School in the White Mountains Regional School District complained that someone was taking food from the kitchen without authority. The district's business manager, William H. McCann, Jr., investigated the complaint and changed locks in the kitchen area. After the locks had been changed, more food was taken. McCann determined that the only person working during the evenings with a key giving access to the pilfered food was the

school's head custodian, Gary Savage. On November 20, 1980, McCann fired Savage.

On April 28, 1981, the association filed a complaint claiming that the district's discharge of Savage violated RSA 273-A:5, I(a) and (d). These sections respectively declare it to be prohibited unfair labor practices for a public employer "[t]o restrain, coerce or otherwise interfere with its employees in the exercise of the rights conferred by this chapter" or "[t]o discharge or otherwise discriminate against any employee because he has filed a complaint, affidavit or petition, or given information or testimony under this chapter." In essence, then, the complaint charged that the district had fired Savage in retaliation for his union membership or for the exercise of rights granted by the Public Employee Labor Relations Law, RSA chapter 273-A.

At a hearing on this complaint on August 6, 1981, there was conflicting evidence on the practices of night shift workers in helping themselves to snacks in the kitchen area. The board later found that such workers had been given vague permission to take some such food. Barbara Ingerson, the head cook and herself a member of the association, testified that she had given no such permission to Savage, however, and had found more food missing than Savage had admitted taking. The association presented evidence that Savage had been active in organizing bargaining units of the association in 1978 and 1979, and had appeared before the board in another case involving the district. McCann testified that he had not known about Savage's prior appearance before the board until after the discharge and had fired him solely for stealing food.

On this and other evidence the board found on December 4, 1981, that Savage had been active in the association, that custodians had customarily been given snacks under the head cook's supervision, that Savage had been discharged "for alleged theft of food," that the charge of theft had not been substantiated by evidence at the hearing, and that there had been a "justifiable misunderstanding" about how much food custodians might take. The board then concluded that the discharge had been an unfair labor practice under RSA 273-A:5, I, and ordered Savage's reinstatement, but without back pay, since he had received unemployment benefits and had worked in the interim period.

On December 23, 1981, the district sought a rehearing. The district claimed, among other things, that nothing the board had found violated RSA 273-A:5, I. The district argued that however unfair the board might consider the discharge to have been, unfairness was not an unfair labor practice under the statute. It therefore urged the

board to reverse itself and find that it was without "jurisdiction" to act.

The association sought a rehearing, too. It claimed that Savage was entitled to back pay, at least to the extent of the difference between the amount he would have earned as an employee of the district and the total of his interim benefits and earnings.

The board granted each motion, and after a further hearing on April 1, 1982, it did what the district had asked. The board reconsidered the evidence admitted at the first hearing and considered the further evidence taken at the second. In a decision issued on June 17, 1982, it concluded that:

> "[N]o case was made that the . . . [district] dismissed Savage because of his Union activities, although this might be inferred as a hidden motivation in dealing with Savage in the manner they did. No specific 'linkage' between Savage's union activities and his discharge were developed to support this charge."

> "[N]o case was developed to indicate that the employer took action to punish Savage because he had 'filed a complaint, affidavit, or petition' which seems to be required by law."

> "While the board feels that the action of dismissing Savage . . . was unfair, it cannot substitute its judgment for management prerogative . . . unless it can be clearly related to the Public Employee Labor Relations Law. In short, actions may be unfair but not an unfair *labor* practice. No such demonstration appeared in this case." (Emphasis in original.)

The board then concluded that it lacked "jurisdiction" to find a violation of the statute, and, in effect, dismissed the complaint.

Before turning to the association's specific assignments of error, we will first take note of a procedural deficiency that appears to infect the association's position in this appeal under RSA chapter 541. RSA 541:4 precludes any appeal from an administrative agency to this court by a party who has not applied for a rehearing before the agency. The same section restricts the scope of the appeal to the grounds, and hence the issues, raised in the motion for rehearing, unless this court expands the scope for good cause shown. The reason for these requirements is obvious: administrative agencies should have a chance to correct their own alleged mistakes before time is spent appealing from them. See *Sklar Realty, Inc. v. Town of Merrimack*, 125 N.H. 321, 480 A.2d 149 (1984).

■ The record before us does not indicate that the association

sought any rehearing after the second decision, of June 17, 1982, from which it now appeals. We have chosen not to dismiss the appeal for this reason, however. The district has not requested dismissal, and it appears that each party erroneously assumed that the association's earlier motion for rehearing satisfied the requirements of RSA 541:4 as a condition for this appeal. The earlier motion did not satisfy those requirements, however, because the earlier motion did not relate to the error that the association now claims. When a decision on any issue is reversed on rehearing, the newly losing party must apply for a further rehearing and satisfy the requirements of RSA 541:4 before appealing to this court. *See Shaw v. City of Manchester*, 118 N.H. 158, 304 A.2d 491 (1978). In the future when a record does not demonstrate that the appealing party has met the requirements of that section we will refuse the appeal or dismiss it on our own motion.

Turning now to the association's assignments of error, we first consider issues about the propriety of the board's action on rehearing. Since we affirm that action dismissing the complaint, we do not consider the appeal from the board's original refusal to award back pay.

The association first argues that the doctrine of res judicata precluded the board's reversal of its original finding of an unfair labor practice. There is no merit in this contention.

The doctrine of res judicata forbids a party to relitigate in a second action matters actually litigated or matters that could have been litigated in an earlier action between the same parties for the same cause of action. *Scheele v. Village District*, 122 N.H. 1015, 453 A.2d 1281 (1982). An administrative proceeding affecting private rights is subject to this same limitation. *Appeal of Global Moving & Storage of N.H., Inc.*, 122 N.H. 784, 451 A.2d 167 (1982). The doctrine does not apply here, however, because we are dealing with two determinations of the same issue in the same action, not with determinations in two separate actions. Moreover, the district's motion for rehearing was authorized by RSA 541:3, and required under RSA 541:4 as a condition precedent to any appeal to this court. The board's action was proper under RSA 541:5. The association's position would require us to read these rehearing provisions right out of the statute in the name of res judicata. It is an odd position to be espoused by a party that itself sought a rehearing.

The association next argues that the board erred in considering a jurisdictional challenge on rehearing, after a hearing on the merits. It cites such cases as *Druding v. Allen*, 122 N.H. 823, 451 A.2d 390 (1982) for the proposition that jurisdictional issues are waived unless

fully litigated before the determination of substantive issues. Since the board reversed itself for lack of "jurisdiction to find an unfair *labor* practice" (emphasis in original), the association maintains that the board violated the rule in *Druding*.

■ We must reject this contention, for it rests on verbal confusion. The rule in *Druding v. Allen supra* and other cases cited by the association applies when a party contests personal jurisdiction over him. There is no such issue in this case. It is obvious that when the board wrote that it lacked jurisdiction to find an unfair labor practice it was stating that the evidence before it did not prove that the district had committed an unfair labor practice within the meaning of the statute cited in the complaint. The board was simply following *Bouchard v. City of Rochester*, 119 N.H. 799, 409 A.2d 772 (1979), which held that the statute does not provide that an employer's unfairness, without more, is an unfair labor practice. This case does not, therefore, turn on personal jurisdiction over a party within the meaning of *Druding*; it turns on the failure of the association to prove a statutory violation.

The association's remaining claim is that the board's judgment in favor of the district cannot be allowed to stand because the board failed to impose proper burdens of production and proof in reaching its conclusion. The association argues that this is a case of what is described in the federal system as one of mixed motives for discharge. *See, e.g.,* 18B BUSINESS ORGANIZATIONS (MB) § 12.04 (Labor Law). The issue in such a case is whether the discharge "may be more accurately explained by reference to legitimate business decision-making or to . . . anti-union feelings." *Id.* at § 12.04 [1]. The resolution of this issue will determine whether or not the employer has committed an unfair labor practice under 29 U.S.C.A. § 158(a)(1) and (4) (West 1973) or under the corresponding provisions of State law in issue here, RSA 273-A:5, I(a) and (d).

In such cases, where the evidence has proven that desire for retaliation was some influence, and the employer claims nonetheless that he acted from legitimate motives, the National Labor Relations Board and the federal courts have had to grapple with difficult questions about how burdens of proof and production of evidence should be imposed: Is proof of any degree of retaliatory motivation sufficient to prove an unfair labor practice, or must there be proof that retaliation was the dominant motive, or the motive without which there would have been no discharge? Is it appropriate to place upon the employer a burden to produce evidence of legitimate motivation? Should the employer have the further burden, and opportunity, to prove some degree of legitimate motivation as an

affirmative defense? A good canvass of the range of possible answers to these questions may be found in two recent opinions, *N.L.R.B. v. Transportation Management Corp.*, 103 S. Ct. 2469 (1983) and *N.L.R.B. v. Wright Line, A Div. of Wright Line*, 662 F.2d 899 (1st Cir. 1981), *cert. denied*, 455 U.S. 989 (1982).

These questions have not heretofore arisen for decision as matters of State law under RSA 273-A:5, I(a) and (d). The association claims that they arose in the present case and that the board committed error in addressing them. Specifically, the association argues that the board placed too heavy a burden of proof upon it and erred in failing to place any burden of production or proof upon the district. We do not agree.

The board did not address these questions of quantum and burden by any express rulings of law. But as we read the record, the board assumed that the association had at the least a burden to prove that retaliation was a motivating influence to some minimal degree. We hold that the board was correct.

In the light of the federal experience distilled in the two cases we have cited above, there is nothing controversial about the position that a complainant under RSA 273-A:5, I(a) and (d) must prove that retaliation was a motivating influence at least to some degree. The only alternative rules would place a burden on an employer to justify his action upon a mere claim of retaliation or upon the complainant's introduction of any evidence of retaliation. *See* 9 WIGMORE, EVIDENCE § 2494 (Chadbourn rev. 1981). In either case there would be no burden of proof at all on the complainant, and the temptation to bring frivolous complaints would be humanly irresistible. Hence we hold that the board correctly placed on the association a burden to prove some minimal degree of retaliatory motivation.

As we read the record in this case, the board did not find that the association had carried that minimal, threshold burden. In its first written decision the board found that Savage had participated in union activities and had been discharged for alleged but unproven theft of food. The board did not find that the district had discharged Savage because of his union activities.

In the second decision the board found that "no case was made" that the district had dismissed Savage because of his union activities, "although this might be inferred as a hidden motivation in dealing with Savage in the manner they did. No specific 'linkage' between Savage's union activities and his discharge were developed to support this charge." Again, at hearing and rehearing "no case was developed to indicate that the employer took action to punish

Savage because he had 'filed a complaint, affidavit, or petition' which seems to be required by law."

We believe the most reasonable reading of these findings is that the board found no prima facie case of retaliation as a motive to any degree. The board obviously understood that the complaint raised an issue of retaliation. But the board went no further in its findings than to speculate on a "hidden motivation" that "might be inferred." The board did not draw the inference.

We agree that the clarity of the board's findings was compromised by the laconic reference to possible inference, and by the board's observation that it had no business to consider unfairness that was not "clearly" related to what the law proscribed. Nonetheless, the most we could concede to the association *arguendo* would be uncertainty as to whether the board made the threshold finding of prima facie showing of some degree of motive to retaliate. But uncertainty is not enough. The association is not entitled to a reversal unless it can demonstrate that the board's decision is clearly unreasonable or unlawful. RSA 541:13. *See* RSA 541-A:20 (Supp. 1983).

Since in our view the record includes no finding that the association had carried a burden to prove at least some minimal degree of retaliatory motivation, no subsequent issues about burdens of proof or production of evidence arose in this case. It was not necessary for the board to decide whether the association had a burden to prove that retaliation was a dominant motive or a motive amounting to but-for causation. Neither was it necessary for the board to decide whether at some point a burden of proof or production should devolve on the district. Such issues did not arise before the board, and consequently they do not arise on this appeal.

*Affirmed.*

All concurred.