Public Employee Labor Relations Board
No. 92-506

APPEAL OF PROFESSIONAL FIREFIGHTERS OF EAST DERRY,
LOCAL 3353, IAFF

(New Hampshire Public Employee Labor Relations Board)

December 28, 1993

*Cook & Molan, P.A.*, of Concord (*Glenn R. Milner* on the brief and orally), for the petitioner, Professional Firefighters of East Derry, Local 3353, IAFF.

*Soule, Leslie, Zelin, Sayward & Loughman*, of Salem (*Robert P. Leslie* on the brief and orally), for the respondent, East Derry Fire Precinct.

HORTON, J.   The petitioner, the Professional Firefighters of East Derry Local 3353, IAFF (union), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) dismissing unfair labor practice charges brought against the East Derry Fire Precinct (precinct) for eliminating a part-time clerk/dispatcher position. On appeal, the union argues that the PELRB's decision dismissing the retaliatory discharge claim is unsupported by the record. Further, it urges us to apply the federal standard of proof to State unfair labor practice cases brought under RSA 273-A:5 (1987). We affirm.

In September 1988, the board of fire commissioners, the governing board of the precinct, hired Nancy Rubino as a part-time clerk/dispatcher to ease the work load on the fire chief's administrative assistant. The administrative assistant and the fire chief manage all aspects of the precinct. Rubino reported directly to the administrative assistant whom she helped with her responsibilities, including dispatching calls at night, handling the payroll, typing correspondence and attending fire commissioners' meetings. Rubino received excellent performance reports for the three years she held the position.

In October 1991, employees of the East Derry Fire Department, including Rubino, presented to the board of fire commissioners a petition to form a collective bargaining unit. Prior to the filing of the petition, the board of fire commissioners learned of Rubino's support for the union and restructured her duties so that she was no longer responsible for "management" functions. Nothing in the record indicates whether or not her salary was reduced. In addition to separating the management and labor functions of her job, the commissioners also took measures to eliminate the confidentiality problems posed by her union participation. Specifically, Rubino was denied access to the administrative assistant's desk because it contained confidential budgetary information, she was no longer asked to type commission correspondence or to act as payroll clerk, and she could no longer attend the fire commissioners' meetings.

On December 16, 1991, the union filed an unfair labor practice charge against the precinct seeking an order from the PELRB that the "harassment" of Rubino be stopped. On December 18, 1991, the board of fire commissioners voted to eliminate Rubino's position citing as its reason that the "[c]ommissioners generally do not feel they can justify the funding for this position based on what they have derived from the position." The union amended its previous complaint to include a retaliatory discharge claim under RSA 273-A:5,

I(a) & (d) (1987). These paragraphs respectively declare it to be a prohibited practice for a public employer "[t]o restrain, coerce or otherwise interfere with its employees in the exercise of the rights conferred by this chapter" or "[t]o discharge or otherwise discriminate against any employee because he has filed a complaint, affidavit or petition, or given information or testimony under this chapter." After a hearing, the PELRB, with one member dissenting, dismissed the unfair labor practice charges. The PELRB found that the elimination of the part-time clerk/dispatcher position fell within the managerial policy prerogative exception of RSA 273-A:1, XI (1987), and that "there was insufficient evidence of any impermissible nexus between the job elimination and the incumbent's union activities."

Much of this appeal turns on what burden of proof is properly employed in a State unfair labor practice hearing and whether at some point that burden shifts to the employer. The union urges us to adopt the federal standard, which it contends involves a shifting burden. Under the federal standard, the union argues, it need only make a *prima facie* showing of retaliatory motivation, at which point the burden shifts to the precinct to show that the elimination would have occurred anyway for wholly permissible reasons. We disagree.

■■ The union misconstrues the showing necessary under federal law to shift the burden to the employer. Although the term *"prima facie"* loosely appears in many cases, including our decision in *Appeal of White Mountains Education Association*, 125 N.H. 771, 778, 486 A.2d 283, 288 (1984), the United States Supreme Court has made clear that under federal law a *prima facie* showing is insufficient to shift any burden to the employer. Significantly, the term *prima facie* is never used in *N.L.R.B. v. Transportation Management Corp.*, 462 U.S. 393, 399 (1980). *Cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ("complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie case* of racial discrimination") (emphasis added). As explained in *Transportation Management Corp.*, 462 U.S. at 399, to establish an unfair labor practice under federal law, the union must prove by a *preponderance of the evidence* that the discharge or elimination was motivated by a desire to frustrate union activity. The employer can meet the union's evidence of retaliatory motivation with its own evidence, as an employer's motivation is a question of fact to be determined by the board from the consideration of all the evidence. *See generally id.* at 398–400. If the board finds by a preponderance of the evidence that the employer was unlawfully motivated to some degree, an employer can still avoid being adjudicated a

violator of federal law by proving by a preponderance of the evidence that regardless of the unlawful motivation, the employer would have taken the same action for wholly permissible reasons. *Transportation Management Corp.*, 462 U.S. at 399. What the union has termed a "shifting burden of proof" actually only "extends to the employer what the Board considers to be an *affirmative defense* but does not change or add to the elements of the unfair labor practice that [the union] has the burden of proving." *Id.* at 401 (emphasis added).

We agree that the federal standard, correctly interpreted, represents a well-reasoned, workable test, and accordingly we adopt it. Our adoption of the federal standard is consistent with our earlier discussion in *Appeal of White Mts.*, 125 N.H. 771, 486 A.2d 283. There we held that, in light of the federal experience, the PELRB "correctly placed on the [union] a burden to prove some minimal degree of retaliatory motivation" in order to establish an unfair labor practice under RSA 273-A:5. *Id.* at 777, 486 A.2d at 288. This burden cannot be met simply by the union making a claim of retaliation and producing some evidence to support the claim. *Id.* It must prove by a preponderance of the evidence some element of retaliatory action. This language is consistent with the federal standard, and its adoption requires no break with our prior holdings.

■ Although we adopt the federal standard, we hold that it does not disturb the PELRB's decision in the present case. Here, the PELRB never had to reach the issue of whether the precinct could establish an affirmative defense because it found that the union had failed to prove by a preponderance of the evidence that the precinct possessed some degree of retaliatory motivation in eliminating Rubino's position. This is evident in the PELRB's finding that "there was insufficient evidence of any impermissible nexus between the job elimination and the incumbent's union activities."

The union next argues that we should reverse because this finding was unlawful and unsupported by the record. We disagree.

■■ The findings of the PELRB "are deemed *prima facie* lawful and reasonable." *Appeal of City of Portsmouth, Board of Fire Commissioners*, 137 N.H. 552, 554, 630 A.2d 769, 770 (1993) (quotation omitted); *see* RSA 273-A:14 (1987); RSA 541:13 (1974). This court is not free to substitute its judgment on the wisdom of an administrative decision for that of the agency making the decision. *Appeal of Toczko*, 136 N.H. 480, 488, 618 A.2d 800, 805 (1992). Consequently, we will not overturn a decision of the PELRB unless the union can show by a clear preponderance of the evidence that the

decision is unjust, unreasonable, or unlawful. RSA 541:13; *Appeal of Keene State College Educ. Ass'n*, 120 N.H. 32, 38, 411 A.2d 156, 161 (1980). In this case, the union failed to meet that burden. We agree with the union that Rubino's position would not have been eliminated but for her inclusion in the bargaining unit. This fact, however, is distinct from the question of whether the elimination was the result of any retaliatory motive. Retaliation occurs when the employer's actions are motivated by a desire to discourage the formation of the union or to punish the employee because the employee "filed a complaint, affidavit, or petition." *Appeal of White Mts.*, 125 N.H. at 777–78, 486 A.2d at 288 (quotation omitted); *see Transportation Management Corp.*, 462 U.S. at 400–03. For purposes of determining whether there was retaliatory motivation, we separately consider the precinct's actions: 1) the reduction of duties to eliminate confidentiality problems between labor and management; and 2) the ultimate elimination of Rubino's position.

■ The precinct restructured Rubino's position after it learned of her support for the union petition. The precinct realized that if Rubino's position was to be included in the bargaining unit, it would have to be restructured to eliminate the confidential, managerial aspects of the job. The union contends that this restructuring was unlawful because the precinct should have contested the inclusion of the position in the bargaining unit under RSA 273-A:8. An employer, however, is not required to contest the inclusion of an employee in the bargaining unit. Moreover, the fact that the precinct did not contest Rubino's inclusion may itself indicate a lack of unlawful anti-union animus: her position was the tenth job the union needed to certify the bargaining unit. *See* RSA 273-A:8, I (1987) (PELRB cannot certify bargaining unit of fewer than ten employees). The precinct never contested the inclusion of her position in the bargaining unit even after it was eliminated; it was included in the bargaining unit as an unfilled job. Accordingly, the PELRB's decision dismissing the unfair labor practice charges was not unlawful.

■ The union also challenges the PELRB's finding of insufficient evidence of any retaliatory motive underlying the elimination of Rubino's position. It cites evidence such as the timing of the elimination, the difficulty of the precinct in stating a reason for the job elimination, the denial of paid bereavement time, and the fire chief asking her to leave a union meeting. We find sufficient evidence in the record that counters the union's evidence of anti-union animus, and from which the PELRB could reasonably have concluded that the union

failed to meet its initial burden of proving some degree of retaliatory motivation by the precinct. For example, the record includes evidence that the precinct eliminated the position because it was no longer worth funding and that the department could and did operate without the position; that Rubino did not receive benefits, such as paid bereavement leave, because she held a *part-time* position; that Rubino was justifiably asked to leave a union meeting because she was no longer an employee; and that the position was never refilled. Considering all the evidence, we hold that the PELRB's finding of no retaliatory motivation was lawful and supported by the evidence. Accordingly, we affirm.

*Affirmed.*

All concurred.