**BETTY PERRY, Petitioner**

v.

**GOVERNMENT EMPLOYEES SERVICE COMMISSION and
GWENDOLYN KEAN, COMMISSIONER OF EDUCATION,
Respondent**

Civil No. 1978/140

District Court of the Virgin Islands

Div. of St. Croix

July 6, 1981

MARIA TANKENSON HODGE, ESQ., St. Thomas, V.I., *for petitioner*

RICHARD KNOEPFEL, ESQ., Office of the Attorney General, St. Thomas, V.I., *for respondent Government Employees*

JACK BRIAN, ESQ., Department of Education (Office of the Commissioner), St. Thomas, V.I., *for Commissioner*

PETERSEN, *Judge, Sitting By Designation*

## MEMORANDUM AND ORDER

This case is before the Court on a writ of review of the June 29, 1978, decision of the Government Employees Service Commission which ordered that petitioner Betty Perry be suspended for fifteen working days without pay from her position as school teacher in the Virgin Islands Public Schools. The decision of the GESC is reversed and remanded for specific action by the GESC.

This case arises from an incident at the Eulalie Rivera School in St. Croix on January 25, 1978, at approximately 1:30 P.M. Judith Morotti, a first grade teacher at the school, was assigned an additional student in an already crowded classroom. She refused to accept the child. There was a confrontation involving her and the assistant principal, Stanley Beckett, over this refusal. Miss Downes, a fellow teacher at the school and assistant union representative, was in the initial confrontation, and she notified Mrs. Perry of the problem. Mrs. Perry likewise taught at the school, and was the union representative there.

Mrs. Perry went to the school library at about 1:30 P.M. where Mrs. Morotti had gone after leaving her classroom, and spoke with

her. Mr. Beckett arrived and there was further discussion. The three returned to the classroom. Mrs. Morotti was upset during this time, and it appears that heated words were spoken by all involved. At one point Mr. Beckett took over the class and read to the children, but eventually Mrs. Morotti resumed her classroom duties.

There was controversy over Betty Perry's role in this incident. Mr. Beckett and an aide, Marilyn Folkes, both claim that Mrs. Perry advised Mrs. Morotti not to accept the student in the class. Mrs. Perry claims that she told Mrs. Morotti of her rights under the union contract, but did not advise her to disobey Mr. Beckett. Her position is that she advised Mrs. Morotti to accept the child and file a grievance afterwards.

The Assistant Principal, Mr. Beckett, recommended that Betty Perry be suspended for 90 days without pay, based on seven factual charges. Those charges were stated by Mr. Beckett in a memorandum to the St. Croix District Superintendent of the Department of Education, and reiterated in a letter to Mrs. Perry from the Commissioner of Education, Gwendolyn Kean:

1. On January 25, 1978, Mrs. Perry counseled Mrs. Morotti not to accept a student in her classroom.

2. On January 25, 1978, Mrs. Perry ordered a school aide assigned to Mrs. Morotti's classroom to return to her office.

3. On January 25, 26, and 27 of 1978, Mrs. Perry used pupils to distribute union materials to various classrooms.

4. On January 27, 1978, Mrs. Perry placed a union notice on the office counter without authorization.

5. On January 27, 1978, without permission Mrs. Perry called a teachers' meeting with a reporter during school hours.

6. Mrs. Perry took a reporter onto school grounds without authorization.

7. On January 30, 1978, Mrs. Perry was absent from her classroom from 8:00 a.m. to 9:00 a.m. without authorization.

The recommendation of Mr. Beckett for a ninety-day suspension on these charges was endorsed by Mrs. Gloria Canegata, the St. Croix District Superintendent of Schools.

The Commissioner of Education met with Mrs. Perry and a union representative on April 7, 1978. She endorsed the recommendation of the Assistant Principal and District Superintendent that Mrs. Perry be suspended, but reduced the time of suspension from ninety to sixty days. The suspension was appealed to the Government Employees Service Commission, which held four days of hearings in

May and June of 1978. The Commission's decision of June 29, 1978, found many of the charges against Mrs. Perry to be unsubstantiated. The Commission found that there was substantial evidence that Perry "contributed to the untenable situation and disruption of the administration". In mitigation, the Commission found that Mrs. Perry should be given consideration for her advice to Mrs. Morotti to accept the student into her classroom and file a grievance later. The Commission also noted in its decision that others involved should also have been penalized. On the basis of its findings, the Commission reduced the suspension of Mrs. Perry from sixty days to fifteen working days. Mrs. Perry's appeal here is from the order of the Commission.

In reviewing the actions of an administrative agency such as the GESC the Court must determine:

    1) Whether the agency acted within the limits of its statutory powers;
    2) Whether the agency applied the relevant law correctly;
    3) Whether the agency findings are supported by substantial evidence on the record;
    4) Whether the agency has abused its discretion by acting in an arbitrary or capricious manner.

See In re Hooper's Estate, 359 F.2d 569, 575 (3rd Cir.) cert. denied sub nom. Marine National Bank v. Government of the Virgin Islands, 385 U.S. 903 (1966); Donastorg v. GESC, 6 V.I. 368, 371, 285 F.Supp. 111, 112 (D.C.V.I. 1968); Turnbull v. Holder, 11 V.I. 94, 98 (D.C.V.I. 1974); Branch v. Bryan, 1980 St. Croix Supp. 327.

The reduction of the Commission of Education's period of suspension was well within the power of the GESC. 3 V.I.C. § 530(c).

The question of whether the agency applied the law correctly is brought forward by petitioner in the form of a claim that the GESC committed reversible error by not considering the union contract in effect at the time of the hearing. Indeed, the GESC explicitly refused to consider any evidence of a union contract in the hearing.

An insuperable difficulty to petitioner's position is that she has not shown the court any union contract in effect at the time of the incident. An agreement was made between the Government of the Virgin Islands Department of Education and the St. Croix Federation of Teachers and the St. Thomas-St. John Federation of Teachers on January 1st, 1972. By its terms this agreement continued in effect until June 30, 1977. A subsequent agreement

between the parties was made on May 10, 1978, to extend to June 30, 1980. This Court has not been apprised of any agreement in effect between the parties for the time period June 30, 1977, to May 10, 1978. The brief for petitioner states the May 10, 1978, agreement was in effect beginning July 1, 1977. However, no foundation has been adduced for this statement; there was no retroactive effect clause in the contract signed on May 10, 1978. It is the rule that except in limited circumstances not applicable here, see Nolde Brothers v. Bakery & Confectionery Workers Union, 430 U.S. 243 (1977), an employer is not bound by the terms of a collective bargaining agreement once that agreement has terminated. Sun Oil Co. of Pennsylvania v. NLRB, 576 F.2d 553, 558 (3d Cir. 1978); see American Ship Building Co. v. NLRB, 380 U.S. 300 (1965); NLRB v. Cone Mills Corp., 373 F.2d 595 (4th Cir. 1967); General Warehousemen and Employees Union v. J. C. Penney Co., 484 F.Supp. 130 (W.D. Pa. 1980).

■ Since this Court finds no union contract in effect during the period of January 25th through January 30th, 1981, the failure of the GESC to consider a union contract in its deliberations was not error. However, the Court notes that the lack of a union contract during the time period from which these charges arose was not the reason the Commission refused to consider the union contract. A contract in effect between teachers and the Department of Education is clearly a relevant factor to consider when a teacher charged with disciplinary violations claims she has acted in compliance with that contract. The Department of Education binds itself by such a contract: it would be a violation of the most fundamental and rudimentary elements of due process of law for the Department to discipline a teacher for her actions in compliance with her contract with the Department.

Turning to the specific factual charges alleged in this case, we find that as to the first charge, stating that Mrs. Perry counseled Mrs. Morotti not to accept the additional student, that the GESC found the opposite. The Commission wrote that

Appellant [Mrs. Perry] must be given consideration for her advise (sic) to Mrs. Morotti to accept the student and file a grievance after.

The GESC did not specifically address the second charge, that Mrs. Perry ordered an aide to leave her assignment, in its decision.

The third and fourth charges, concerning union materials, were eliminated at the GESC hearing.

528

The fifth and sixth charges concerned the calling of a teachers' meeting during school hours and inviting a reporter on school grounds without approval. The GESC found that the evidence did not support these charges.

As to the seventh charge, unauthorized absence from her classroom, the Commission found that the evidence established that Mrs. Perry was on campus and available for duty.

Thus, of the seven charges brought against Mrs. Perry, the GESC found six unwarranted, and was silent on the remaining one (i.e. charge number two). Nevertheless, the Commission ruled that a suspension of Mrs. Perry for fifteen days was warranted. The language in which the GESC made their ruling was:

> We find there to be substantial evidence that Appellant contributed to the untenable situation and disruption of the administration.

This language parallels the words of Mr. Beckett in his memorandum to Mrs. Canegata, that "In a series of recent events, Mrs. Perry stimulated, and in a way constructively created, an untenable situation".

■ 3 V.I.C. § 530(a) states that when a department head decides to suspend a regular employee for cause, he shall furnish the employee with a written statement of the charges against him. This allows the employee to prepare a defense against the charges alleged. There were seven specific charges in Mr. Beckett's memorandum, and these were treated appropriately by the GESC as the charges against Mrs. Perry. One could not expect Mrs. Perry to prepare a defense against such a nebulous concept as "contributing to an untenable situation".

■■ This Court holds that the GESC should decide the specific charges brought against Mrs. Perry. The decision of the GESC may have been a well-intentioned compromise; but an employee is entitled to a decision on the specific charges placed against her, to which she has had an opportunity to respond. The GESC has decided that six of the charges are without merit. This case is remanded to the GESC for a decision on the sole question of whether the Department of Education has met its burden of proof of establishing reasonable grounds for suspension on the basis of charge two, that of ordering Miss Marilyn Folkes, a school aide, to leave Mrs. Morotti's classroom. A new hearing is not necessary. If the Commission finds that this charge is not established, it should dis-

miss all penalties against Mrs. Perry. If the Commission does find this specific charge to be valid, then it may institute a suspension not to exceed its penalty of fifteen working days ordered on June 29, 1978.

## ORDER

It is hereby ORDERED

That this case be, and hereby is, reversed and remanded to the Government Employees Service Commission for action not inconsistent with this opinion.