**VIRGIN ISLANDS CONSERVATION SOCIETY, INC., ST. CROIX LANDMARK SOCIETY, INC. and GALLOWS BAY HOMEOWNERS ASSOCIATION, Petitioners**

v.

**VIRGIN ISLANDS BOARD OF LAND USE APPEALS, Respondent**

and

**VIRGIN ISLANDS PORT AUTHORITY, Intervenor**

Civil No. 1984/292

District Court of the Virgin Islands

Div. of St. Croix

December 27, 1985

GERALD T. GRONER, ESQ., and JOHN R. COON, ESQ., Christiansted, St. Croix, V.I., *for petitioners*

PATRICIA M. FITCH, ESQ., and VINCENT F. FRAZER, ESQ., St. Thomas, V.I., *for intervenor*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The petitioners appeal from a decision of the respondent which reversed a decision of the Coastal Zone Management Commission, St. Croix Committee. The effect of the Board's reversal was to give approval to the construction of a cruise port terminal at Gallows Bay in Christiansted Harbor by the Virgin Islands Port Authority. For the reasons stated herein, we reverse, and reinstate the decision of the Coastal Zone Management Commission, St. Croix Committee ("CZM Committee"), which denied the application.

## I. FACTS

In February 1984, the Virgin Islands Port Authority ("Authority") filed an application for a major coastal zone permit with CZM,

seeking approval to construct a Christiansted cruise ship port. Not only was new construction involved, but significant dredging of the sea bottom inside the harbor was contemplated. The CZM Committee conducted a hearing, took evidence from the Authority and its experts, and also received evidence from others opposed to the project. The cruise port facility cost is $22 million.

On May 8, 1984, the CZM denied the application, issuing its findings and conclusions in writing. The Authority appealed to the Board of Land Use Appeals. The Board conducted a hearing, at which the Authority presented a slide show and statements by its representatives and other experts. The Board also heard oral argument from the attorney for one of the petitioners.

On August 23, 1984, the Board reversed the CZM denial of the Authority's application and approved the project, its decision becoming final on August 29, 1984. On October 9, 1984, the petitioners filed their petition for a writ of review of the Board's decision. The Authority was granted permission to intervene as an interested party. Briefs were submitted and oral argument was had.

There are two essential issues before us: (1) Did the Board violate 12 V.I.R.&R. § 914–2(f) in receiving evidence from the Authority which was not presented to the CZM? (2) Did the Board apply the appropriate standard of review of the CZM decision?

## II. DISCUSSION

A. *New Evidence Before the Board*

◼ In making a determination of issues on appeal before it, the Board is restricted "to a review of the decision below based on evidence tendered in the proceeding below and arguments of the appellants, appellees and the Authority below." 12 V.I.R.&R. § 914–2(f).

At the hearing on the appeal, the Authority presented a great deal of information which was not before the CZM Committee. For instance, an expert, David Griggs, made a presentation concerning the operation of a hydraulic dredge, problems and solutions concerning turbidity and dredging, a description of operations at the St. Thomas airport involving land fill and how that project was monitored for environmental purposes. In addition, a slide show was offered, with a running commentary, depicting a dredging operation. And, Authority Executive Director John Harding and expert witness Darlin Brin made extensive presentations to rebut the CZM Committee's findings.

The presentation described above was so far beyond the scope of

the evidence presented at the CZM Committee hearing that one Board member stated for the record:

> Mr. Harding . . . a lot of new things have been brought to light today, a lot of new ideas, a lot of new presentations, a lot of new technical data has been presented.

■ The Authority argues on appeal that the information presented was simply by way of background and supplemental to the oral argument. We do not accept that assertion. What the Authority decided to do was make a presentation that was more complete to the Board than it made to the CZM Committee, answering questions on subjects it had not given sufficient weight to before the CZM Committee. In accepting the evidence over the continuous and strong objections of counsel for the petitioners herein, the Board committed reversible error.

## B. *Appropriate Standard of Review*

In discussing a standard of review applicable in this case, we must be mindful that we are actually discussing two standards: the first to be applied by the Board to the CZM Committee's decision, and the second to be applied by this Court to the Board's actions.

The standard of review by the Board over CZM Committee decisions is spelled out in 12 V.I.R.&R. § 914–3 is as follows:

*What is Reviewable.*

The Board may review any decision or action below in which the findings, inferences, conclusions or decisions are:

(a) in violation of constitutional, Organic Act of 1954, or statutory provisions;

(b) in excess of the statutory authority of the Commission, Committee, or Commissioner;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary, capricious, or characterized by abuse of discretion, or clearly unwarranted exercise of discretion.

We are concerned in this opinion with (e) above, the so-called "substantial evidence" standard. During the executive session of the Board after the appeal hearing, the attorney for the Board reviewed the above section of the Rules and Regulations and defined subsection (e) to mean that:

. . . if you find that based upon the record, that the evidence before you is sufficient to lead to a different conclusion as to that reached by the CZM and you so find, then you may reverse . . . .

This is an incorrect statement of the "substantial evidence" standard. But it was the basis for the decision by the Board reversing the CZM Committee.

■ In reviewing a CZM Committee determination under the "substantial evidence" standard, the Board is required to show great deference to that Committee's decision, and uphold it if there is substantial evidence in the record to support the actual finding. Herbert v. GESC, Civ. No. 84/84, 1985, St. Croix Supp. ––– (D.V.I. March 21, 1985), aff'd, ––– F.2d ––– (3d Cir. December 11, 1985); Perry v. GESC, 18 V.I. 524, 527 (D.V.I. 1981); Branch v. Bryan, 18 V.I. 54, 56 (D.V.I. 1980). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

Therefore, the Board was required to uphold the CZM Committee if there was substantial evidence before the Committee to support its conclusion. Even if there was also substantial evidence to support a different conclusion, it was not free to reverse because it preferred that different conclusion.

In our review on appeal, we limit ourselves to determining whether the Board correctly applied the appropriate standard. In making this determination, we also review the evidence before the CZM Committee.

Any fair review of that evidence leads inescapably to the conclusion that there was substantial evidence before the Committee to support its denial of the major coastal zone permit. Much of this evidence was included in the Environmental Assessment Report submitted by the Authority. Since this was also the same master plan and feasibility study prepared for the Authority by experts in the field, on a supposed unbiased and non-partisan basis, it candidly describes potential problems with the project which might affect the environment. Included in the candid discussion is the admission of probable damage to the reefs which protect Christiansted harbor, the destruction of seagrass and the danger to fish and other sea life which feed on the seagrass, and the stabilizing effect that it has on sediment on the sea bottom.

The report also raises questions about traffic control and vastly increased use of highways between Christiansted town and the

cruise port when ships are in harbor, and offers no solution to this problem. It points to a further problem of storage of fill lifted from the sea and elsewhere, and the problems of silting from dredging, and the limited solutions known for purposes of prevention.

Submitted to the CZM Committee was a water quality certification conducted by a division of the V.I. Department of Conservation and Cultural Affairs. At first the certification recommended a denial for the cruise port facility which is unsigned. A second, nearly identical document was then submitted, which was signed by the Commissioner of that department, and which recommended approval of the facility. However, the language and explanation of both documents is strongly unfavorable.

Described therein is the prospect of devastation to the reefs, the seabed, the shoreline and the quality of the water in the harbor if the project is permitted to go forward. One can only assume that the CZM Committee was impressed by this professionally conducted survey, since it was submitted by the Department of Conservation and Cultural Affairs as part of its own responsibility when a major permit application is made. Its unfavorable effect is not lessened by the reversal from rejection to approval in the first and second versions of the study.

Two submissions were made to the Committee by experts independent of the Authority. Dr. Kenneth Haines wrote on behalf of one of the petitioners. He is a recognized local expert in environmental matters. The second offering was from William Tobias, a fisheries biologist for the Division of Fish and Wildlife of the territorial government. Both strongly criticized the proposal.

■ Of course, in determining whether there was substantial evidence before the CZM Committee, we have reviewed only the matters which were unfavorable to the project, thereby supporting the Committee's denial of the application. There was contrary evidence as well in support of approval of the project. However, upon review, we find that there was substantial evidence to support the denial, and the Board committed reversible error in failing to so find.

This is not necessarily the end of the matter, however. At oral argument, the parties agreed that the Authority is not prevented from making a new application to the CZM Committee, thus giving it a fresh start toward approval.

Since we find that the Board committed reversible error in two aspects of its handling of the appeal from the CZM Committee determination, we will enter an order reversing the Board's own

reversal of the CZM Committee denial of the application, and reinstate the CZM Committee determination.

## III. CONCLUSION

The decision of the Board of Land Use Appeals will be reversed, and the denial of the major coastal zone permit by the CZM Committee will be reinstated.

## ORDER

THIS MATTER is before the Court on appeal from a decision of the Virgin Islands Board of Land Use Appeals reversing a decision of the Coastal Zone Management Commission, St. Croix Committee. The Court having filed its Memorandum Opinion of even date herewith, now therefore it is

ORDERED AND ADJUDGED:

THAT the decision of the Virgin Islands Board of Land Use Appeals dated August 23, 1984, which conditionally approved the application of the Virgin Islands Port Authority for a major coastal zone permit for construction of a cruise port facility in Christiansted harbor is REVERSED; and

THAT the decision of the Coastal Zone Management Commission, St. Croix Committee, dated June 6, 1984, which denied a major coastal zone permit for the same purpose to the Virgin Islands Port Authority, is REINSTATED.