## GOVERNMENT OF THE VIRGIN ISLANDS ACTING BY THE DEPARTMENT OF LICENSING AND CONSUMER AFFAIRS, Plaintiff/Respondent

### v.

## MT RETAILERS, INC., MOUNTAIN TOP, Defendant/Petitioner

Civil No. 1095/1993

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 28, 1995

63

MARY R. WEBER, (TOM BOLT & ASSOCIATES), P.C., St. Thomas, *for Petitioner, MT Retailers, Inc.*

ALVA SWAN, Acting Attorney General, PAUL L. GIMENEZ, Solicitor General, ELLIOT M. DAVIS, Assistant Attorney General, Department of Justice, St. Thomas, V.I., *for Respondent, Government of the Virgin Islands*

DIASE, *Judge*

## MEMORANDUM OPINION

On December 21, 1993, Petitioner MT Retailers, Inc. ("Mountain Top") filed a Petition for Review of the Respondent Department of Licensing and Consumer Affairs' ("DLCA") final order in which the Commissioner held that Mountain Top had engaged in night club activities without the appropriate nightclub license; levied a fine; and denied Mountain Top's application for a night club license. The Commissioner, however, permitted Mountain Top to maintain its tavernkeeper liquor license (A), which allows the sale and consumption of alcoholic beverages on its premises. Based on the following, the final order of the Commissioner is affirmed.

## I. FACTS

Since the 1950's, Mountain Top has operated on St. Thomas as a tourist oriented restaurant, bar and retail center. On October 1, 1972, the Virgin Islands Zoning and Subdivision Law, 29 V.I.C. Chapter 3, Subchapter I, became effective. The area in which Mountain Top is located was zoned R-1 (residential, low density) upon the enactment of the zoning law. Mountain Top continued its operation in that area as a prior nonconforming use pursuant to 29 V.I.C. § 234.[1] In 1993, Mountain Top held a valid tavernkeeper liquor license (A)[2] and a restaurant license.

---

[1] 29 V.I.C. § 234(a) provides, in pertinent part, that any lawful use of land existing prior to the adoption of the zoning regulations, located in a district in which it would not be permitted as a new use under the regulations, is declared to be a "nonconforming use".

[2] Tavernkeeper liquor license (A) and tavernkeeper (A) license are used interchangeably in the Commissioner's Order and the Petitioner's and Respondent's briefs. The Court will, however, refer to the tavern license held by Mountain Top as the "tavernkeeper liquor license (A)" as 8 V.I.C. § 9(a)(3) describes it as such.

In May of 1993, in an attempt to generate additional revenues, Mountain Top engaged the service of the Starlites, a live local band, to perform every Friday evening. In June of 1993, Mountain Top applied to DLCA for a night club license and a "restaurant A" license.[3] Prior to DLCA reviewing the merits of the application, it was submitted to the Department of Planning and Natural Resources ("DPNR") for zoning recommendations. DPNR recommended that the night club license be denied because Mountain Top was located in an R-1, low density, residential district.

After Mountain Top initiated the Friday evening dances, a group of residents in the Mountain Top area formed a community group named the Mountain Top Community Residential Group and filed a formal complaint with the Virgin Islands Police Department regarding the noise, litter and parking problems generated from the activities. Raymond L. Hyndman, the former V.I. Chief of Police, along with an official from DLCA, met with some residents to discuss the complaint. During this same time, Mountain Top hired a consultant, more security and a shuttle bus service to alleviate the parking congestion and noise.

In response to the complaints, DLCA conducted an inspection of the premises on August 16, 1993. On September 2, 1993, it issued an Administrative Complaint charging Mountain Top with the unlawful operation of a night club without a valid night club license and ordered it to cease and desist all night club operations. On October 12, 1993, DLCA issued an Amended Administrative Complaint seeking, additionally, the revocation of Mountain Top's tavernkeeper liquor license (A). Mountain Top denied any violations.

On December 17, 1993, after a full hearing had been conducted on December 8, 1993, the Hearing Officer issued a final order in the form of a Memorandum Opinion and Order ("Order") from which Mountain Top now seeks relief. This Order was approved and signed by the Commissioner of DLCA on the same day.[4] The Hearing Officer found the following pertinent facts in the Order:

---

[3] A "restaurant A" license applies to an establishment that has a seating capacity of 25 persons or more. 27 V.I.C. § 302.

[4] The Hearing Officer's Order and the Commissioner's Order are one and the same.

1. Mountain Top currently holds a tavernkeeper liquor license (A) and a restaurant license.

2. Mountain Top's business has more than 30 seats; has bartender and waitress service; and has dancing and live entertainment.

3. Mountain Top has operated a night club since May, 1993.

4. DLCA cited Mountain Top for operating a night club without a license.

5. Mountain Top applied to DLCA for a night club license which was subsequently recommended for denial by the Commissioner of the Department of Planning and Natural Resources.

6. Mountain Top's business is located in an R-1 zoning district.

Moreover, the Hearing Officer reached the following conclusions of law, in pertinent part:

1. Mountain Top has operated a night club without the proper license since May, 1993 in violation of 27 V.I.C. § 301 *et seq.*

2. Mountain Top's application for a night club license would be denied pursuant to 29 V.I.C. § 228.

3. The zoning laws of the Virgin Islands, pursuant to 29 V.I.C. § 228, prohibit night club activities in R-1 zones.

4. In addition to penalties prescribed under 27 V.I.C. 307(d), an administrative fine not more than 25% per month of the license fee can be assessed by the Commissioner, for businesses operating without first obtaining a license.

5. Pursuant to 27 V.I.C. § 304, the Commissioner of DLCA has the authority to order a defendant to cease and desist from conducting business after a proper hearing.

The Hearing Officer also held, in pertinent part, that:

1. Mountain Top's application for a night club license would be denied; and

2. Mountain Top's tavernkeeper liquor license (A) should not be revoked.

On appeal, Mountain Top asserts that the Hearing Officer erred on the following grounds:

1. The Hearing Officer's determination that it operated a "night club" without the proper license was arbitrary, capricious or without any rational basis.

66

2. The Hearing Officer acted arbitrarily, capriciously and without any rational basis by determining that:

    a. Mountain Top's application for a night club license should be denied because of a recommendation by DPNR that the area in which Mountain Top is located is zoned for residential use; and

    b. a recommendation from DPNR, with respect to the issuance of a night club license, is binding upon DLCA.

3. Its Motion to Dismiss at the conclusion of DLCA's case in chief should have been granted because of DLCA's failure to present affirmative evidence that Mountain Top was operating a night club without a license or allowing wrongful behavior of a substantial character upon its premises.[5]

## II. DISCUSSION

### A. *Standard of Review of Administrative Orders*

27 V.I.C. § 304(i), the governing statute for DLCA, provides that:

[a]ny person adversely affected by any order of the Commissioner may obtain a review thereof by filing a written petition for review with the Territorial Court within 30 days after the entry of said order . . . . Upon such review the findings of the Commissioner, if supported by substantial evidence, shall be conclusive.

In reviewing the actions of DLCA, this Court must determine the following:

1) Whether the agency acted within the limits of the statutory powers;

2) Whether the agency's factual findings are supported by substantial evidence on the record;

---

[5] This Court will defer to the Hearing Officer's decision to deny the motion to dismiss, as the Court's role on review is limited. Statutes and rules, such as the Rules of Civil Procedure, relating to court proceedings, do not apply to administrative proceedings. 2 Am. Jur. 2d Administrative Law § 266 (1974); FCC v. Allentown Broadcasting Corp., 349 U.S. 358, 99 L. Ed. 1147, 75 S. Ct. 855 (1955). Moreover, administrative agencies are not bound by the strict rules of evidence governing jury trials. Morton v. Dow, 525 F.2d 1302 (10th Cir. 1975).

3) Whether the agency applied the relevant law correctly; and
4) Whether the agency has abused its discretion by acting in an arbitrary or capricious manner.

Perry v. Government Employees' Service Commission, 18 V.I. 524 (D.V.I. 1981).

## B. *Statutory Authority of DLCA*

In determining whether DLCA acted within the limits of its statutory power, the Court must look to the enabling statute which granted DLCA its authority to act and outlined the limitations of its authority. Clearly, an agency may exercise only the powers granted to it by statute. Branch v. Bryan, 18 V.I. 54, 58 (D.V.I. 1980) (citing Pentheny, Ltd. v. Government of the Virgin Islands, 360 F.2d 786, 790 (3d Cir. 1966)).

■ 27 V.I.C. § 301 *et seq.* governs the licensing of businesses and occupations. The Commissioner of DLCA is empowered and entrusted to administer the licensing of businesses. 27 V.I.C. § 301. Pursuant to 27 V.I.C. § 304, the Commissioner also has the authority to grant, deny, revoke and suspend licenses. A night club license is only one of the many licenses the Commissioner administers.

Additionally, pursuant to 8 V.I.C. § 13, the Commissioner of DLCA is responsible for the licensing of businesses that seek to sell alcoholic beverages. And, under 8 V.I.C. § 17, the Commissioner has the authority to issue, revoke and suspend liquor licenses.

## C. *Review of the Hearing Officer's Factual Findings*

The Court must determine whether the Hearing Officer's factual findings are supported by substantial evidence on the record. Fredericks v. Government Employees' Service Commission, 21 V.I. 65 (D.V.I. 1984). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . and the determination of what amount of evidence is substantial is a matter of law to be determined by the Court upon a considered evaluation of the entire record." Id. at 68. It "constitutes more than a scintilla of evidence. . . . It must be

68

enough evidence to justify if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Government of the Virgin Islands v. Public Employees' Relations Board, 22 V.I. 12, 23 (Terr. Ct. 1986).

■ It is not enough to review the facts in only part of the record. Fredericks v. Government Employees' Service Commission, 21 V.I. at 68. Indeed, the record considered as a whole is the basis for ascertaining whether the Hearing Officer's determination is supported factually. Moreover, the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Government of the Virgin Islands v. Public Employees' Relations Board, 22 V.I. at 23. Furthermore, the Court should not disturb the Hearing Officer's findings because the Court, on a de novo review, would have reached a "different" conclusion. Id. at 23.

■ The Hearing Officer found that Mountain Top had operated a night club since May, 1993. A "night club" is defined under three sections of the V.I. Code. In 27 V.I.C. § 302(c) and 27 V.I.C. § 351a(b), it is almost identically defined as "every business which has a capacity for at least 30 persons seated at tables and the bar"; which "employs" or "maintains" a bartender; and which "maintains table service and dancing and/or other live entertainment for the guests." In 29 V.I.C. § 225(74), the same wording exists except that it refers to "an establishment" rather than "every business".

The elements of a night club, therefore, are as follows:

1) a business or establishment;
2) having a capacity for 30 persons seated at tables and the bar;
3) having a bartender and table service; and
4) having dancing and/or live entertainment.

The Hearing Officer relied on the following testimony as dispositive that Mountain Top was indeed conducting night club activities and noted such in the final Order:

1) Robert Miller, the general manager, testified that three hundred to four hundred (300 — 400) persons patronized Mountain Top on Friday evenings;

69

2) Robert Miller also testified that Mountain Top had seating for more than 30 persons;

3) Sonny Bernier, the bartender, testified that there are two waitresses and four bartenders for serving customers; and

4) Sonny Bernier also testified that the crowd enjoyed dancing. Kenneth Springette, a member of the Starlites band, testified that his band, the Starlites, plays at Mountain Top regularly on Friday nights.[6]

The Court finds that the above facts satisfy the elements of a night club and are conclusive. There was substantial evidence on the record to support the Hearing Officer's finding that Mountain Top was engaged in night club activities, and the Court, therefore, affirms this decision.

## D. *Review of the Hearing Officer's Application of Law*

■ In determining whether the Hearing Officer applied the relevant law correctly, the Court is required to perform a more intrusive review than with the factual findings. Herbert v. Government Employees' Service Commission, 21 V.I. 358 (D.V.I. 1985). The Court may uphold the Hearing Officer's legal conclusions only if he has applied the relevant law correctly. *Id.* at 361. Furthermore, in reviewing legal determinations, the Court is free to substitute its own judgment for that of the Hearing Officer. *Id.*

### 1. *Operation of a Night Club Without the Proper License*

The Hearing Officer concluded that Mountain Top's tavernkeeper liquor license (A) did not authorize its operation as night club. He also concluded that Mountain Top had operated a night club without the proper license since May, 1993 in violation of 27 V.I.C. § 301 *et seq.*[7]

a. *The parameters of a tavernkeeper liquor license (A)*

Mountain Top holds a valid tavernkeeper liquor license (A). Pursuant to 8 V.I.C. § 9(a)(3), a tavernkeeper liquor license (A)

---

[6] All testimony is taken from the transcript of the December 8, 1993, final hearing.

[7] The Order actually referred to 27 V.I.C. § 301 *et al.*, but that is merely a citation error.

allows ". . . the sale of distilled spirits or fermented liquor or both for consumption on the premises, and fermented liquors in sealed containers." DLCA contends that this license does not authorize Mountain Top to conduct live entertainment and dancing (night club activities) at its premises.

On the other hand, Mountain Top argues that it operated as a tavern and that its tavernkeeper liquor license (A) permits dancing and live entertainment. It bases this argument on 8 V.I.C. § 1, which defines a tavern as "any public drinking place with or without accommodations for eating and dancing . . . ."

Additionally, Mountain Top asserts that the only difference between a tavernkeeper liquor license (A) and a night club license is that the night club license permits later hours of operation. Since it did not wish to operate the longer hours of a night club, the tavernkeeper liquor license (A) was sufficient.

27 V.I.C. § 352a establishes the closing times for businesses. In regard to a tavern, it provides that it "shall cease doing business, including the dispensing of liquors, and closing its doors to the public at 1:00 a.m. of every day, except Saturdays, Sundays and legal holidays when the hour of ceasing business . . . shall be 2:00 a.m. . . . ." In regard to a night club, it provides that it "shall cease business and close doors to the public at 4:00 a.m. of every day . . . ."

The Hearing Officer rejected Mountain Top's argument that the only difference between the two licenses was the hours of operation. He held that the distinguishing difference between a tavern and a night club is the nature of the activity: a tavern is a place for drinking while a night club is a place where dancing or live entertainment occurs.

■ It must be emphasized that "considerable weight should be accorded to an executive department's construction of a statutory scheme that it is entrusted to administer . . . ." James v. West Indian Burgers Inc., 24 V.I. 67, 71 (Terr. Ct. 1988) (citations omitted). Indeed, "where an agency is delegated, either explicitly or implicitly, to interpret a statute, the construction it gives to that provision is controlling if it is reasonable." Id. at 71.

■ This Court supports the Hearing Officer's differentiation between a tavern and a night club. The significant difference

between the two is that a night club can have "dancing and/or live entertainment." 27 V.I.C. § 302(c) and § 351a(b); 29 V.I.C. § 225(74). A tavern, on the other hand, is a place for drinking and may also have dancing; but, importantly, no provision is made for "live entertainment." 8 V.I.C. § 1. Indeed, the Court finds the Hearing Officer's construction of these statutes to be very reasonable.

■ The Court also supports the Hearing Officer's determination that the tavernkeeper liquor license (A) issued to Mountain Top merely authorizes the sale of liquor and does not allow other types of activities. This license is clear and its parameters are well established: it only allows the sale of distilled spirits or fermented liquors. Obviously, Mountain Top's activities are limited by its license. Moreover, the administrative interpretation of 8 V.I.C. § 9(a)(3) is consistent with the obvious purpose of the statute, which is to regulate the manufacture, sale and exportation of alcoholic beverages in the Virgin Islands and is a reasonable interpretation. 8 V.I.C. § 2. The Court will, therefore, affirm the Hearing Officer's determination that Mountain Top's tavernkeeper liquor license (A) does not permit night club activities.

In support of his conclusions that night club activities were not permitted under the tavernkeeper liquor license (A), the Hearing Officer opined that 8 V.I.C. § 9(a)(3), which defines the specific license, was enacted later in time than 8 V.I.C. § 1, which defines a tavern; and as such, controls the definition of a tavern. The Court cannot subscribe to this reasoning or this legal conclusion, although it has affirmed the ultimate outcome of the issue.

Contrary to the Hearing Officer's determination, both § 9(a)(3) and § 1 were derived from the 1942 St. Thomas and St. John Municipal Ordinance, which regulated the licensing and sale of alcoholic beverages on the two islands. Thus, one was not later in time than the other.

The Court deems the Hearing Officer's holding to be erroneous, but, in fact, harmless. The proper historical nexus between Title 8, Chapter 1, which presently regulates the licensing and sale of alcoholic beverages and its predecessor, the 1942 Ordinance, is necessary. A tavern is defined identically in 8 V.I.C. § 1 and Section 1 of the 1942 Ordinance. Likewise, the description of the

tavernkeeper liquor license (A) contained in 8 V.I.C. § 9 is fairly identical to that found in Section 3(e) of the Ordinance.

The revision note for 8 V.I.C. § 1 provides that "the remaining definitions [tavern] are from the 1942 St. Thomas and St. John Municipal Ordinance." Section 1 of the Ordinance is the general definitions section as is 8 V.I.C. § 1. Also, the revision note for 8 V.I.C. § 9 provides that "in subsection (a), the licenses listed in paragraphs (1), (2), (3), and (4) are taken from St. Thomas and St. John [Ordinance]." Section 3 of the Ordinance and 8 V.I.C. § 9 list the types of liquor licenses available and one such license is the tavernkeeper liquor license (A).

There is, therefore, no basis for the Hearing Officer's determination that 8 V.I.C. § 9(a)(3) was enacted later in time than 8 V.I.C. § 1. But, again, his decision constitutes harmless error.

### b. *The mandatory nature of a night club license*

Mountain Top next submits that night club licenses should be liberally granted to only those businesses which a) fulfill the night club requirements, and b) wish to operate longer hours. It asserts that it may have fulfilled the night club requirements, but since it does not wish to operate longer hours, it should not have to obtain a night club license. If the Court accepted Mountain Top's argument, Mountain Top would not need to obtain a night club license as it did not desire to operate the longer hours, even though its activities were night club activities. DLCA argues and the Hearing Officer held that Mountain Top's reasoning is substantially flawed as it leaves out the key words of the night club definition, which are that it *"shall be construed to include every business."*

▮ The Court agrees that Mountain Top's interpretation of the statutes is flawed. First, the two statutes which give us the definition of a night club establish that it is "every business" which meets the specific criteria. 27 V.I.C. § 302(c) and § 351a(b). The traditional statutory interpretation of the word "every" is that it is inclusionary rather than exclusionary. See 73 Am. Jur. 2d Statutes § 244 (1974). The Court will give deference to such an interpretation of "every." Mountain Top must, accordingly, obtain a night club license, since it was determined earlier that its activities satisfied all of the night club criteria.

■ Second, a night club, by statute, must close by 4:00 a.m. every day. If a night club chooses, however, it can close earlier. Nothing prevents it from doing so. Mountain Top, as a night club, is free to close prior to 4:00 a.m., but it must still have a night club license. The Court will, therefore, affirm the Hearing Officer's conclusion that businesses which satisfy the night club requirements must obtain a night club license.

## 2. *DLCA's Reliance on the Recommendation of DPNR*

Mountain Top further argues that DLCA improperly relied on the recommendation of DPNR to deny its application for a night club license because DPNR's recommendation is not binding. The Hearing Officer held that DLCA is bound to rely on the recommendation of DPNR. The evidence before the Court establishes that Mountain Top's application for a night club license was submitted to DPNR in accordance with 27 V.I.C. § 303(a); that DPNR recommended that the license not be granted because Mountain Top was located in an area zoned R-1; and that DLCA denied the license based on this recommendation.

■ As stated earlier, the Commissioner of DLCA is authorized to grant, deny, revoke and suspend licenses. Upon the receipt of an application for an initial license, DLCA is required to submit copies of the application to DPNR for determination of site acceptability. 27 V.I.C. § 303(a). The Court is satisfied that DLCA fully complied with the statutory mandate of 27 V.I.C. § 303(a) and properly denied Mountain Top's night club application because DPNR notified DLCA that Mountain Top was located in an R-1, low density, residential district and recommended its denial. This decision is not arbitrary or capricious. A night club is not one of the uses permitted as a matter of right in such a district. 29 V.I.C. § 228. The Court will affirm the Hearing Officer's conclusion that DLCA properly relied on DPNR's recommendation to deny Mountain Top's application for a night club license.

The Court is compelled, at this juncture, to specifically address one of Mountain Top's arguments as to how the Hearing Officer erred by not rejecting the recommendation of DPNR. Mountain Top asserts that, as a tavern providing occasional live entertainment, it was a nonconforming use prior to the enactment of the

1972 zoning laws. Based on that fact, Mountain Top argues that because taverns and night clubs are in the same zoning classification, it is free to change uses from a tavern to a night club, since such a change in use, from one nonconforming use to another nonconforming use, in the same zoning classification, was lawful under 29 V.I.C. § 234(e), which permits the change if there were no alterations to the structure of the building. The Hearing Officer held that this issue was not properly within the jurisdiction of the Commissioner of DLCA as the Commissioner of DPNR makes zoning determinations.

Much testimony was provided at the hearing as to whether taverns and night clubs were in the same zoning classifications; whether a night club had to be an accessory use or a secondary use if it was located in a residential district; and whether a night club had to be an accessory use to a hotel or a restaurant. The Court finds none of this testimony relevant at this time.

The record reveals that it is undisputed that Mountain Top's operation as a tourist oriented restaurant, bar and retail center before 1972, is a prior nonconforming use. A nonconforming use is defined as "a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated." Shonkwiler & Morgan, Land Use Litigation § 12.03(1) (1986); 83 Am. Jur. 2d Zoning and Planning § 624 (1992); see also 29 V.I.C. § 234(a).

29 V.I.C. § 234(e) provides that "[a] nonconforming use *may be changed* to another nonconforming use in the same zoning classification providing no structural changes are made in the building." (emphasis added). It must be stressed that zoning classifications, variances and the changing of nonconforming uses are not within the purview of DLCA, but solely within the province of the Commissioner of DPNR. 29 V.I.C. § 235. The critical question remains, though: does 29 V.I.C. § 234(e) confirm such authority on Mountain Top that it may single handedly convert from one nonconforming use to another, as it asserts? Certainly, it does not.

The Virgin Islands zoning law is set forth in Title 29, Chapter 3, Subchapter I. 29 V.I.C. § 235(a) provides that "this subchapter shall

be administered and enforced by a Zoning Administrator who shall be the Commissioner of DPNR." Furthermore, 29 V.I.C. § 235(d) provides, in pertinent part, that *"no change* or extension of use and *no alteration* shall be made in a nonconforming use of a building or land without a Certificate of Occupancy having first been issued by the Zoning Administrator that such change, extension or alteration is in conformity with the provisions of this subchapter and as provided by subsection (c) of section 234." (emphasis added).

The record before the Court contains no evidence to suggest that Mountain Top complied with the requirements of section 235. It is the Court's opinion that Mountain Top is required to seek the approval of the Commissioner of DPNR prior to altering, changing or extending a nonconforming use and that the authority of the Commissioner to grant an alteration, change or extension of such nonconforming use is discretionary. The Hearing Officer acted properly in holding that this issue must be addressed before the Commissioner of DPNR and not the Commissioner of DLCA. The Court will, therefore, affirm the Hearing Officer's determination as proper.

E. *Scope of the Hearing Officer's Discretion*

Finally, this Court can set aside the Order if the Hearing Officer has abused his discretion and acted arbitrarily and capriciously. Branch v. Bryan, 18 V.I. at 59. The Court finds that a rational basis existed for the Hearing Officer's action. Indeed, substantial evidence existed that DLCA acted within its statutory authority; that the Hearing Officer's factual findings were well founded; and that the legal conclusions announced were basically accurate.

### III. CONCLUSION

Based on the above, this Court first concludes that DLCA acted within the limits of its statutory authority pursuant to 27 V.I.C. § 301 and 8 V.I.C. § 13, in that the Commissioner of DLCA is empowered to license businesses and occupations, and is also entrusted to license the sale of alcoholic beverages. Second, the Hearing Officer's factual determination that Mountain Top en-

gaged in nightclub activities was supported by substantial evidence on the record. And, although the Hearing Officer erred in establishing the proper historical foundation between 8 V.I.C. § 1 and 8 V.I.C. § 9, that error was, in fact, harmless and does not diminish the legal conclusion that Mountain Top engaged in night club activities without a valid license.

Third, Mountain Top's tavernkeeper liquor license (A) specifically defines and limits the activities in which Mountain Top can participate. Fourth, "every" business which fulfills the requirements of a night club must obtain a license. Fifth, nothing in the record supports a claim that this matter was decided arbitrarily or capriciously. The mandate of 27 V.I.C. § 303, which required that Mountain Top's application for a night club license be submitted to DPNR, was fully complied with and the Commissioner of DLCA properly relied on the recommendation of DPNR that Mountain Top was located in an area zoned R-1, residential, low density, in denying the application for the license.

Sixth and finally, Mountain Top does not have the authority to itself legally change from one nonconforming use to another. It must first seek the approval of the Commissioner of DPNR to do so and this approval is discretionary, not mandatory. In all other respects, the Hearing Officer's Order was proper.

Accordingly, the Commissioner of DLCA's December 17, 1993, final order will be affirmed.

### ORDER

This matter is before the Court on Petitioner MT Retailers, Inc., Mountain Top's Petition for Writ of Review. This Court having filed a written Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED that the Memorandum Opinion and Order of the Commissioner of the Department of Licensing and Consumer Affairs dated December 17, 1993, be and the same hereby is AFFIRMED; and it is further

ORDERED that copies of this Order be directed to Elliott M. Davis, Esq., Assistant Attorney General, Department of Justice; Elmira Hicks, Attorney at Law, Department of Licensing and Consumer Affairs; and Mary R. Weber, Attorney at Law.